1 A.3d 470

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Ronnie THAXTON.**

**Misc. Docket AG No. 53, Sept. Term, 2009.**

Court of Appeals of Maryland.

July 28, 2010.

Gail D. Kessler, Asst. Bar Counsel (Melvin Hirshman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

No argument on behalf of the Respondent.

Argued before HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BATTAGLIA, J.

This is a reciprocal discipline action concerning Ronnie Thaxton, Respondent, who was admitted to the Bar of this Court on July 1, 2002, and to the Bar of the District of Columbia on December 4, 1995. On September 10, 2009, the District of Columbia Court of Appeals ordered Thaxton be suspended from the practice of law for one year with six months stayed, followed by a three year probationary period, in which he was required to participate in the District Bar's Practice Management Advisory Service. The Court of Appeals based its decision on Thaxton's violation of District of Columbia Rules of Professional Conduct 1.2(a),[1] 1.4(a),[2] 1.4(b),[3] 1.4(c),[4] 1.5(c),[5] 1.15(a),[6] 1.15(b),[7] 1.15(c),[8] and 8.4(d),[9] to which

---

**1.** District of Columbia Rule of Professional Conduct 1.2(a) provides:

A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.

**2.** District of Columbia Rule of Professional Conduct 1.4(a) provides:

A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

**3.** District of Columbia Rule of Professional Conduct 1.4(b) provides:

A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**4.** District of Columbia Rule of Professional Conduct 1.4(c) provides:

A lawyer who receives an offer of settlement in a civil case or a proffered plea bargain in a criminal case shall inform the client promptly of the substance of the communication.

**5.** District of Columbia Rule of Professional Conduct 1.5(c) provides:

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee

is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial, or appeal, litigation, other expenses to be deducted from the recovery, whether such expenses are to be deducted before or after the contingent fee is calculated, and whether the client will be liable for expenses regardless of the outcome of the matter. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and if there is a recovery, showing the remittance to the client and the method of its determination.

6. District of Columbia Rule of Professional Conduct 1.15(a) provides: A lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in a financial institution which is authorized by federal, District of Columbia, or state law to do business in the jurisdiction where the account is maintained and which is a member of the Federal Deposit Insurance Corporation, or the Federal Savings and Loan Insurance Corporation, or successor agencies. Other property shall be identified as such and appropriately safeguarded; provided, however, that funds need not be held in an account in a financial institution if such funds (1) are permitted to be held elsewhere or in a different manner by law or court order, or (2) are held by a lawyer under an escrow or similar agreement in connection with a commercial transaction. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

7. District of Columbia Rule of Professional Conduct 1.15(b) provides: Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property, subject to Rule 1.6.

8. District of Columbia Rule of Professional Conduct 1.15(c) provides: When in the course of representation a lawyer is in possession of property in which interests are claimed by the lawyer and another person, or by two or more persons to each of whom the lawyer may have an obligation, the property shall be kept separate by the lawyer until there is an accounting and severance of interests in the property. If a dispute arises concerning the respective interests among persons claiming an interest in such property, the undisputed portion shall be distributed and the portion in dispute shall be kept separate by the lawyer until the dispute is resolved. Any funds in dispute shall be deposited in a separate account meeting the requirements of paragraph (a).

9. District of Columbia Rule of Professional Conduct 8.4(d) provides:

Thaxton admitted his wrongdoing, and upon the District of Columbia Court of Appeals Board on Professional Responsibility's Report and Recommendation for discipline.

On December 11, 2009, the Maryland Attorney Grievance Commission, acting pursuant to Rules 16–751(a)(2) [10] and 16–773(b), [11] filed a Petition for Disciplinary or Remedial Action against Thaxton to which a certified copy of the District of Columbia Court of Appeals Opinion and the Hearing Committee's Report were attached. Bar Counsel incorporated by reference into its Petition the Opinion of the District of Columbia Court of Appeals and the findings of fact of the Hearing Committee. The District of Columbia Court of Appeals' opinion, filed on September 10, 2009, provided:

PER CURIAM: Respondent Ronnie Thaxton, a member of the bar of this court, has admitted to the negligent misappropriation of settlement funds in one case and interfering with the administration of justice in another. Respondent admits that in his representation of Ms. Terri

---

It is professional misconduct for a lawyer to:

✳     ✳     ✳

(d) Engage in conduct that seriously interferes with the administration of justice....

**10.** Rule 16–751(a)(2) provides:

(a) **Commencement of disciplinary or remedial action.**

✳     ✳     ✳

(2) Conviction of crime; reciprocal action. If authorized by Rule 16–771(b) or 16–773(b), Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals without prior approval of the Commission. Bar Counsel promptly shall notify the Commission of the filing. The Commission on review may direct the withdrawal of a petition that was filed pursuant to this subsection.

**11.** Rule 16–773(b) provides:

(b) **Petition in Court of Appeals.** Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or placed on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2). A certified copy of the disciplinary or remedial order shall be attached to the Petition, and a copy of the Petition and order shall be served on the attorney in accordance with Rule 16–753.

Roberts, he (1) did not notify his client when a settlement was offered or secure her consent to accept the settlement offer; (2) failed to notify his client when the settlement funds had been received and deposited into his trust account; (3) failed to timely pay Doctor Ashkan Aazmi's fee, which he was entitled to receive from the settlement for healthcare services rendered; and (4) withdrew $5,000 as his attorney's fees from his trust account immediately upon depositing them in 2006 without notifying his client that he did so. In his representation of Ms. Janice Arkue, Respondent admits that he interfered with the administration of justice when he failed to appear at a status hearing and a show cause hearing, resulting in the dismissal of Ms. Arkue's civil action for want of prosecution.

Respondent made the aforementioned admissions voluntarily, with the advice of counsel in connection with a petition for negotiated discipline, and supporting affidavit that was prepared by Bar Counsel and jointly filed on April 30, 2009. The Board on Professional Responsibility referred the petition to Hearing Committee Number Four, and following a hearing on May 29, 2009, where Respondent (1) reaffirmed his admission to all of the factual allegations in the petition; (2) acknowledged that each constituted a violation of the Rules of Professional Conduct; (3) stated that he understood the ramifications of the proposed sanction; and (4) confirmed that he was entering into the disposition freely and voluntarily, and not as the result of any coercion or duress, the Committee issued the report now before this court that recommends the negotiated sanction be imposed.

We have the report and recommendation in accordance with our procedure in uncontested disciplinary cases, and hereby accept the Hearing Committee's Report and Recommendation approving the petition for negotiated discipline. Accordingly, it is,

**ORDERED** that Ronnie Thaxton is hereby suspended from the practice of law in the District of Columbia for the period of one year with six months stayed, followed by a

three year probationary period to include participation in the District of Columbia Bar's Practice Management Advisory Service. The conditions of Respondent's probation are as outlined by the Hearing Committee's Report and Recommendation: if a new complaint is filed against Respondent within one year of the date of the beginning of the period of suspension, and such complaint results in a finding that Respondent violated the Rules of Professional Conduct, Respondent will be required to serve the remaining six months of the suspension consecutively with whatever other sanction may be imposed on him in the new matter or matters. Further, Respondent must return Ms. Robert's attorney's fees with interest and remit interest on money he has already delivered to her, prior to the expiration of the three-year probationary period. Finally, for the purpose of seeking reinstatement to the Bar, Respondent's suspension shall not begin until he complies with the affidavit requirements of D.C.Bar. R. XI, § 14(g) (2001 & 2008 Supp.).

*So ordered.*

(Footnotes omitted).

The District of Columbia Court of Appeals based its opinion on the Report and Recommendation of Hearing Committee Number Four Approving Petition for Negotiated Discipline, filed on July 10, 2009:

I. *PROCEDURAL HISTORY*

This matter came before Hearing Committee Number Four on May 29, 2009, for a limited hearing on a Petition for Negotiated Discipline (the "Petition"). The members of the Hearing Committee were Eric L. Yaffee, Esquire, Chair, Ms. Janice A. Buie, and Karen E. Branson, Esquire. The Office of Bar Counsel was represented by Assistant Bar Counsel, Clayton Smith III, Esquire. Respondent, Ronnie Thaxton, Esquire, was represented by Wendell Robinson, Esquire, and was present throughout the limited hearing.

The Hearing Committee has carefully considered the Petition filed by Bar Counsel, the supporting affidavit filed

by Respondent (the "Affidavit"), and the representations made during the limited hearing by Respondent and Bar Counsel. The Chairman of the Hearing Committee also has fully considered Bar Counsel's investigative files *ex parte*.

II. *FINDINGS PURSUANT TO D.C. BAR R. XI, § 12.1(c) AND BOARD RULE 17.5*

The Hearing Committee, after full and careful consideration, finds that:

1. The Petition and Affidavit are full, complete, and in proper order.

2. Respondent is aware that there is currently pending against him an investigation into allegations of his conduct.

3. The nature of the allegations that were brought to the attention of Bar Counsel were that, in connection with Bar Docket No. 2007–D118, Respondent failed to notify Dr. Ashkan Aazami, a healthcare provider who provided medical services to Respondent's client, Ms. Terri Roberts, of the settlement of Ms. Roberts' claim, and failed to deliver to Dr. Aazami funds which he was entitled to receive from the settlement. In connection with Bar Docket No. 2009–D051, Respondent failed to appear at a status hearing and a show cause hearing, which resulted in the dismissal of Ms. Janice Arkue's civil action for want of prosecution.

4. Respondent has knowingly and voluntarily acknowledged that the material facts and misconduct reflected in the Petition are true.

5. Respondent is agreeing to the disposition because Respondent believes that he cannot successfully defend against charges of misconduct based on the stipulated facts set forth in the Petition.

6. Bar Counsel has made no promises to Respondent other than what is contained in the Petition for Negotiated Discipline. Those promises and inducements are that Bar Counsel will not pursue against Respondent any other disciplinary charges that could have been brought against him in Bar Docket No. 2007–D118 or Bar Docket No. 2009–D051. Respondent stated during the limited hearing that no other

promises or inducements were made to him other than those set forth in the Petition.

7. Respondent has conferred with his counsel.

8. Respondent has freely and voluntarily entered into this negotiated discipline.

9. Respondent has not been subjected to coercion or duress.

10. Respondent is competent and not under the influence of any substance or medication.

11. Respondent is fully aware of the implications of the disposition being entered into, including, but not limited to, the following:

a) he will have waived his right to cross-examine adverse witnesses and to compel witnesses to appear on his behalf;

b) he will have waived his right to have Bar Counsel prove each and every charge by clear and convincing evidence;

c) he will have waived his right to file exceptions to reports and recommendations filed with the Board and with the Court;

d) the negotiated disposition, if approved, may affect his present and future ability to practice law;

e) the negotiated disposition, if approved, may affect his bar memberships in other jurisdictions; and

f) any sworn statement by Respondent in his affidavit may be used to impeach his testimony if there is a subsequent hearing on the merits.

g) Respondent understands the conditions of his probation as set forth in Paragraph 12, below.

12. Respondent and Bar Counsel have agreed that the sanction in this matter should be suspension from the practice of law for one year with six months stayed, followed by three years of probation. However, if a new complaint is filed against Respondent within one year of the date of the beginning of the period of suspension, and such complaint

results in a finding that Respondent violated the Rules of Professional Conduct, Respondent will be required to serve the remaining six months of the suspension consecutively with whatever other sanction may be imposed against him, in the new matter or matters. The issue of probation revocation is acknowledged by Respondent and later clarified by the Hearing Committee at the limited hearing, and agreed to by Respondent's attorney and Assistant Bar Counsel, to mean that if a new complaint is filed during Respondent's six month suspension and the first six months of his probation and the Hearing Committee, the Board on Professional Responsibility and District of Columbia Court of Appeals find a violation of the Rules of Professional Conduct, then the probation will automatically be revoked without a probation revocation hearing.

Respondent will disgorge the $5,000 attorney's fees he collected in connection with his representation of Ms. Roberts. Respondent will pay Ms. Roberts the $5,000 with interest at a rate of 6% per annum for the period beginning April 16, 2006, until the amount is paid to her in full. Respondent will repay the $5,000 plus interest within three years from the beginning of his probation. At the limited hearing, the parties clarified the disgorgement requirement to mean that if Respondent makes a partial payment of the $5,000, he will only pay interest at a rate of 6% per annum on the remaining balance. If Respondent fails to provide proof that he repaid the money within the three-year probationary period, he will be required to serve the remaining six months of his suspension, and may be required to show cause why he should not be subject to further discipline.

Respondent will also pay interest to Ms. Roberts, at a rate of 6% per annum, on the $9,340 that he has already delivered to her for the period of April 26, 2006, through November 26, 2008, which totals $1,447.70. Respondent will pay this interest within three years from the beginning of his probation. If Respondent fails to provide proof that he repaid the money within the three-year probationary period, he will be required to serve the remaining six months of his

suspension, and may be required to show cause why he should not be subject to further discipline.

Respondent will consult with the District of Columbia Bar's Practice Management Advisory Service ("PMAS") and within one month of the beginning of his probation will submit a copy of any program or plan recommended by PMAS and proof of compliance with such program or plan to the Office of Bar Counsel and the Board including the submission of quarterly reports, should PMAS appoint him a monitor. If Respondent fails to provide proof that he has complied with the PMAS program or plan, he will serve the remaining six months of his suspension, and may be required to show cause why he should not be subjected to further discipline.

13. Bar Counsel has provided a statement demonstrating the following circumstance in aggravation, which the Hearing Committee has taken into consideration: Respondent was issued an Informal Admonition on November 3, 2008, for violating Rule 5.5(a), for assisting a person who was not a member of the District of Columbia Bar in the performance of activities that constitutes the unauthorized practice of law.

14. Respondent and Bar Counsel have provided the following circumstances in mitigation which the Hearing Committee has taken into consideration:

a) Respondent took full responsibility for his misconduct and demonstrated remorse;

b) Respondent cooperated with Bar Counsel;

c) In connection with Bar Docket No. 2007–D118, Respondent's misconduct was the product of poor judgment, in that his decision to settle the case without obtaining his client's consent was motivated by the imminent expiration of the statute of limitations in his client's claim; his failure to promptly notify and pay Dr. Aazami or his client was based upon his poor law office management rather than a dishonest attempt to deprive them of their funds; and, Respondent's trust

account records revealed that the balance in Respondent's trust account never fell below that which he owed Dr. Aazami or his client; and

d) In connection with Bar Docket No. 2009–D051, Respondent's failure to appear was based upon poor office management rather than a deliberate attempt to frustrate the operations of the court.

15. During the limited hearing, the following additional evidence was presented by Bar Counsel and taken into consideration: letter to Dr. Ashkan Aazami dated May 19, 2009, in Bar Docket No. 2007–D118; letter to Ms. Terri Roberts dated May 19, 2009, in Bar Docket No. 2007–D118; and, letter to Ms. Janice Arkue in Bar Docket No. 2009–D051.

Bar Counsel and Respondent have submitted the following statement of relevant precedent in the Petition in support of the agreed upon sanction: "The Respondent's misappropriation in this matter is comparable to that of the attorney in *In re Haar*, 698 A.2d 412 (D.C.1997), [where] the attorney was suspended for … negligent misappropriation of entrusted funds." The petition asserts that Respondent engaged in the same "special kind of misappropriation" that the attorney in *Haar* did because both the Respondent and the attorney in *Haar* earned the fee and had a good faith, mistaken belief that they were authorized to take the funds. The usual sanction for negligent misappropriation is suspension from the practice of law for six months.

In addition to the above negligent misappropriation cases, the Petition cites the following cases in support of the stipulated sanction: *In re Outlaw*, 917 A.2d 684 (D.C.2007) (per curiam) (60–day suspension for, *inter alia*, lack of communication with client, neglect of client's case resulting in the running of the statute of limitations and dishonesty, for the failure to notify client of the dismissal); *In re Ross*, 658 A.2d 209 (D.C.1995) (30–day suspension for, *inter alia*, commingling and failure to promptly notify and pay a third party with an interest in entrusted funds held by attorney); *In re Choroszej*, [624 A.2d 434 (D.C.1992) ] (six-month sus-

pension for negligent misappropriation and failing to maintain complete records).

## III. *DISCUSSION*

The Hearing Committee shall approve an agreed negotiated discipline if it finds:

a) that the attorney has knowingly and voluntarily acknowledged the facts and misconduct reflected in the Petition and agreed to the sanction therein;

b) that the facts set forth in the Petition or as shown during the limited hearing support the attorney's admission of misconduct and the agreed upon sanction; and

c) that the agreed upon sanction is justified.

With regard to the first factor, this Hearing Committee finds that Respondent has knowingly and voluntarily acknowledged the facts and misconduct reflected in the Petition and has agreed to the sanction therein. Respondent, after being placed under oath, admitted the stipulated facts and charges set forth in the Petition and denied that he was under duress or had been coerced into entering into this disposition. Respondent understands the implications and consequences of entering into this negotiated discipline.

Respondent has acknowledged that any and all promises that have been made to him by Bar Counsel as part of this negotiated discipline are set forth in writing in the Petition and that there are no other promises or inducements that have been made to him. Moreover, Respondent is agreeing to this negotiated discipline because he believes that he could not successfully defend against the misconduct described in the Petition.

The Hearing Committee has carefully reviewed the facts set forth in the Petition, and we conclude that they support the admissions of misconduct and the agreed upon sanction.

With regard to the second factor, the Petition states, in connection with Bar Docket No. 2007–D118, that Respondent violated Rule 1.2(a), in that Respondent failed to abide by his client's decision whether to accept an offer of settle-

ment in a matter. The evidence supports Respondent's admission that he violated this Rule in that the stipulated facts describe that Respondent did not discuss with Ms. Roberts GEICO's settlement offer or secure Ms. Roberts' consent to accept GEICO's settlement offer.

Second, the Petition states that Respondent violated Rule 1.4(a), in that Respondent failed to keep a client reasonably informed about the status of a matter. The evidence supports Respondent's admission that he violated this Rule in that the stipulated facts describe that Respondent agreed to settle with GEICO on or about March 24, 2006, without discussing the settlement offer or securing Ms. Roberts' consent to accept the settlement offer. On or about April 24, 2006, Respondent deposited the settlement check into the trust account without notifying Ms. Roberts that the settlement funds had been received. On or about April 30, 2006, Respondent also withdrew $5,000 as his attorney's fees from the trust account without notifying Ms. Roberts that he would be doing so.

Third, the Petition states that Respondent violated Rule 1.4(b), in that Respondent failed to explain a matter to his client to the extent reasonably necessary for her to make an informed decision about the matter. The evidence supports Respondent's admission that he violated this Rule in that the stipulated facts describe that the contingent fee agreement provided "attorney agrees not to settle Client's claims without Client's consent." Respondent did not discuss with Ms. Roberts GEICO's settlement offer or secure Ms. Roberts' consent to accept GEICO's offer to settle the claim.

Fourth, the Petition states that Respondent violated Rule 1.4(c), in that upon receiving an offer of settlement in a civil case, Respondent failed to inform his client promptly of the substance of the communication. The evidence supports Respondent's admission that he violated this Rule in that the stipulated facts describe that Respondent did not notify Ms. Roberts that he had received funds from GEICO in settlement of her claims.

Fifth, the Petition states that Respondent violated Rule 1.5(c), in that Respondent represented his client on a contingent fee basis, but upon conclusion of the matter failed to timely provide the client with a written statement stating the outcome of the matter, the remittance to the client from the recovery or the method of its determination. The evidence supports Respondent's admission that he violated this Rule in that the stipulated facts describe that Respondent and Ms. Roberts entered into a contingent fee agreement. While Respondent deposited the $15,000 settlement check into his trust account on or about April 24, 2006, he did not provide Ms. Roberts with a writing that showed the disbursement from the settlement until about November 26, 2008.

Sixth, the Petition states that Respondent violated Rule 1.15(b), in that upon receiving funds in which the client and a third person had an interest, Respondent failed to promptly notify and deliver to the client and third person funds they were entitled to receive. The evidence supports Respondent's admission that he violated this Rule in that the stipulated facts describe that on or about April 24, 2006, Respondent did not notify THFC or Ms. Roberts that he had received GEICO's settlement funds. On or about September 14, 2006, THFC sent correspondence by regular mail to Respondent, inquiring about payment or discussion of payment options, to which Respondent did not respond. On or about January 24, 2007, THFC sent further correspondence by certified mail to Respondent about Ms. Roberts' outstanding balance of $660.00 due February 7, 2007. Respondent did not claim the certified mail, pay the bill, or reply to THFC's correspondence. Respondent did not pay THFC until on or about May 11, 2007. Ms. Roberts was not notified of the distribution amount until November 26, 2008, at which time the funds were disbursed to her.

Seventh, the Petition states that Respondent violated Rule 1.15(c), in that by taking his fee without his client's prior authorization or consent, Respondent engaged in the negligent misappropriation of entrusted funds. The evi-

dence supports Respondent's admission that he violated this Rule in that the stipulated facts establish that Respondent withdrew from the trust account $5,000 as his attorney's fees without notifying Ms. Roberts of the withdrawal, but that he acted based on a good-faith belief that he was entitled to the funds under the terms of his retainer agreement. *See In re Haar,* 698 A.2d 412.

Eighth, the Petition states that Respondent violated Rule 1.15(a) and Rule XI, § 19(f), in that Respondent failed to maintain complete records of his handling, maintaining, and disposition of entrusted funds. The evidence supports Respondent's admission that he violated this Rule in that the stipulated facts describe that when Bar Counsel conducted its investigation, Respondent was unable to produce records about the disposition of funds from Ms. Roberts' settlement.

Finally, in connection with Bar Docket No. 2009–D051, the Petition states that Respondent violated Rule of Professional Conduct 8.4(d), in that Respondent engaged in conduct that seriously interferes with the administration of justice. The evidence supports Respondent's admission that he violated this Rule in that the stipulated facts describe that Respondent failed to appear at a status hearing on October 10, 2008, or appear at a show cause hearing on November 14, 2008, which caused the Court to dismiss his client's case for want of prosecution.

The third factor the Hearing Committee must consider is whether the sanction agreed upon is justified. Under *In re Addams,* 579 A.2d 190, 192 (D.C.1990) (en banc), the presumptive sanction for intentional or reckless misappropriation is disbarment unless the misconduct resulted from no more than simple negligence. Bar Counsel bears the burden to establish the requisite level of intent. *See In re Anderson,* 778 A.2d 330, 338 (D.C.2001) ("If [the attorney's] conduct was not deliberate or reckless, then Bar Counsel [has] proved no more than simple negligence."). *Id.* at 338 (quoting *In re Ray,* 675 A.2d 1381, 1388 (D.C.1996)). The Court has found negligent misappropriation where an attor-

ney has taken a legal fee based on a good-faith belief that he was entitled to the fee. *See, e.g., In re Ray,* 675 A.2d 1381.

The parties assert that Respondent engaged in a "special kind of [negligent] misappropriation" under Rule 1.15(c), when he took his legal fee pursuant to the terms of the retainer agreement with his client, but without her consent, citing *In re Haar,* 698 A.2d 412. The fact that Respondent took the legal fee from a settlement that was not authorized by his client gives us pause in accepting the parties' stipulation that the misappropriation was negligent. However, given Bar Counsel's assertion that evidence at a contested proceeding could persuade a trier of fact that Respondent took the fee in good faith, the fact that Respondent did not take anything more than the fee he was eligible to receive under the retainer, and that he did so under circumstances strongly suggesting negligence and poor case management, we concur in the parties' stipulation that the misappropriation was negligent.

Negligent misappropriation usually results in a six-month suspension. *See, e.g., In re Edwards,* 870 A.2d 90 (D.C. 2005). Specifically, the Court has imposed a six-month suspension for negligent misappropriation based on the improper taking of a legal fee based on a good-faith belief of entitlement to the fee. *See, e.g., In re Ray,* 675 A.2d 1381.

In *Haar,* the Court imposed a 30–day suspension, instead of the usual six months. During a fee dispute, the client would only pay $4,000 to the attorney. While the attorney and client were resolving the dispute, but before the dispute had been formally resolved, the attorney took $4,000 from the trust account. *Id.* at 414–15. The Court found that Haar had engaged in a "special kind of misappropriation" where he had earned the fee and had a good faith, mistaken belief that he was authorized to take the funds, since the client had agreed to pay at least the amount withdrawn. 698 A.2d at 424. *See also In re Midlen,* 885 A.2d 1280 (D.C.2005).

Respondent's misconduct is more similar to the attorney in *Haar* who committed negligent misappropriation. While

Respondent took the agreed upon attorney's fees without authorization, he did so under circumstances strongly suggesting negligence and poor case management. The facts do not establish clear and convincing evidence of intentional or reckless misappropriation. Thus, suspension, as opposed to disbarment, is appropriate.

We further conclude that a suspension greater than the six-month norm for negligent misappropriation is appropriate and find the sanction to which the parties have stipulated—a one year suspension with six months stayed and three years' probation with conditions—justified. Respondent's misconduct was more aggravated than a single negligent misappropriation in that he not only took an unauthorized fee in a case and settled it without the client's consent, but he also interfered in the administration of justice in a different case by failing to appear at a hearing, which led to a dismissal of the case. A greater sanction may be warranted when a disciplinary matter involves more than negligent misappropriation. *See In re Midlen, supra* (attorney suspended for 18 months for negligent misappropriation in violating Rules 1.15(a) and (c) and also engaging in dishonesty). Upon consideration of the entire record in this matter including the circumstances in aggravation and mitigation and the relevant precedent, we conclude that the agreed upon negotiated discipline is justified.

## IV. *CONCLUSION AND RECOMMENDATION*

It is the conclusion of the Hearing Committee that the discipline negotiated in this matter is appropriate.

For the reasons stated above, it is the recommendation of this Hearing Committee that the negotiated discipline be approved.

(Citations omitted and alterations in original).

In the Petition for Disciplinary or Remedial Action, Bar Counsel cited the D.C. Court of Appeals' conclusion that Thaxton violated several District of Columbia Rules of Profes-

sional Conduct corresponding to Rules 1.2(a),[12] 1.4(a)(2) and (3),[13] 1.4(b),[14] 1.5(c),[15] 1.15(a),[16] 1.15(d),[17] 1.15(e),[18] and 8.4(d)[19]

---

**12.** Maryland Rule of Professional Conduct 1.2(a) provides:

Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

**13.** Maryland Rules of Professional Conduct 1.4(a)(2) and (3) provide:

A lawyer shall:

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information. . . .

**14.** Maryland Rule of Professional Conduct 1.4(b) provides:

A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

We note that unlike the District of Columbia Rules of Professional Conduct, the MRPC do not include a Rule 1.4(c), but the language of the equivalent D.C. Rule is incorporated into Comment 2 to Maryland Rule 1.4:

■ If these Rules require that a particular decision about the representation be made by the client, [Rule 1.4](a)(1) requires that the lawyer promptly consult with and secure the client's consent prior to taking action unless prior discussions with the client have resolved what action the client wants the lawyer to take. For example, a lawyer who receives from opposing counsel an offer of settlement in a civil controversy or a proffered plea bargain in a criminal case must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer.

**15.** Maryland Rule of Professional Conduct 1.5(c) provides:

A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the

of the Maryland Rules of Professional Conduct ("MRPC" or "Rule") and requested that we issue a Show Cause Order. On January 27, 2010, we issued a Show Cause Order pursuant to Rule 16–773(e) [20] to which Bar Counsel responded, by stating

client will be responsible whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of its determination.

16. Maryland Rule of Professional Conduct 1.15(a) provides:

A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

17. Maryland Rule of Professional Conduct 1.15(d) provides:

Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

18. Maryland Rule of Professional Conduct 1.15(e) provides:

When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute.

19. Maryland Rule of Professional Conduct 8.4(d) provides:

It is professional misconduct for a lawyer to:

\*　　\*　　\*

(d) engage in conduct that is prejudicial to the administration of justice. . . .

20. Rule 16–773(e) provides:

that Respondent's misconduct "warrant[ed] a different discipline in Maryland from that which he received in the District of Columbia" and requested that we order an indefinite suspension with the right to apply upon readmission to the District of Columbia Bar. Thaxton did not respond to the Show Cause Order and did not appear for oral argument.

## DISCUSSION

■ In reciprocal discipline cases, pursuant to Rule 16–773(g), we generally treat the factual findings and conclusions of law from the original jurisdiction as conclusive evidence of an attorney's misconduct:

> (g) **Conclusive effect of adjudication.** Except as provided in subsections (e)(1) and (e)(2) of this Rule, a final adjudication in a disciplinary or remedial proceeding by another court, agency, or tribunal that an attorney has been guilty of professional misconduct or is incapacitated is conclusive evidence of that misconduct or incapacity in any proceeding under this Chapter. The introduction of such evidence does not preclude the Commission or Bar Counsel from introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed.

*See also Attorney Grievance v. Haas,* 412 Md. 536, 988 A.2d 1033 (2010); *Attorney Grievance v. Whitehead,* 390 Md. 663, 669, 890 A.2d 751, 754–55 (2006).

---

(e) **Exceptional circumstances.** Reciprocal discipline shall not be ordered if Bar Counsel or the attorney demonstrates by clear and convincing evidence that:
    (1) the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
    (2) there was such infirmity of proof establishing the misconduct as to give rise to a clear conviction that the Court, consistent with its duty, cannot accept as final the determination of misconduct;
    (3) the imposition of corresponding discipline would result in grave injustice;
    (4) the conduct established does not constitute misconduct in this State or it warrants substantially different discipline in this State; or
    (5) the reason for inactive status no longer exists.

■ In the present case, Respondent admitted to misconduct amounting to negligent misappropriation of settlement funds in one case and interference with the administration of justice in another. In the first case, Respondent failed to obtain his client's consent to a settlement, failed to notify his client when the settlement funds were received and deposited into his escrow account, failed to timely pay his client's doctor's share of the settlement funds, and failed to notify his client that he was withdrawing attorney's fees from the settlement funds. In the second case, Respondent failed to appear at a status hearing and a show cause hearing, which resulted in the dismissal of his client's case for want of prosecution. These are the findings of the D.C. Court of Appeals and are further supported by Thaxton's own admission of wrongdoing; they are clearly violative of MRPC 1.2(a), 1.4(a)(2) and (3), 1.4(b), 1.5(c), 1.15(a), 1.15(d), 1.15(e), and 8.4(d).

## SANCTION

■ In terms of sanction, we recently explained our approach to reciprocal discipline cases in *Attorney Grievance v. Gordon,* 413 Md. 46, 55–58, 991 A.2d 51, 56–58 (2010):

> We have often stated the well established principle that in reciprocal discipline cases, we are prone or inclined, but not required, to impose the same sanction the original jurisdiction imposed. *See Attorney Grievance v. Whitehead,* 390 Md. 663, 671, 890 A.2d 751, 756 (2006); *Attorney Grievance v. Weiss,* 389 Md. 531, 546, 886 A.2d 606, 615 (2005). As we explained in *Whitehead,* 390 Md. at 668, 890 A.2d at 754, our rules state that we *may* impose "corresponding discipline," not that we *shall* impose "identical discipline." *See* Rule 16–773(f).[16]

[16] Rule 16–773(f) ("Action by Court of Appeals") states that we *"may* immediately impose corresponding discipline," *"may* enter an order designating a judge [for a hearing]," or *"may* enter any other appropriate order." (emphasis added):

Upon consideration of the petition and any answer to the order to show cause, the Court of Appeals may immediately impose corresponding discipline or inactive status, may enter an order designating a judge pursuant to Rule 16–752 to hold a hearing in accordance with Rule 16–

757, or may enter any other appropriate order. The provisions of Rule 16–760 apply to an order under this section that disbars or suspends an attorney or that places the attorney on inactive status.

Our use of the words "inclined," "prone," "tend to," and "often," explicitly indicate our reluctance to adopt a blanket rule of reciprocity, *Weiss*, 389 Md. at 547, 886 A.2d at 615. We are required to analyze each case individually and decide whether to deviate from the original jurisdiction's sanction. *Id.* at 547, 886 A.2d at 615; *see also Attorney Grievance v. Scroggs*, 387 Md. 238, 254, 874 A.2d 985, 995 (2005) ("We are required to assess for ourselves the propriety of the sanction imposed by the other jurisdiction and that recommended by the Commission.").

We, generally, follow the original jurisdiction's sanction "when the purpose for the discipline in the original jurisdiction is congruent with ours." *Weiss*, 389 Md. at 547, 886 A.2d at 615. Our purpose in attorney discipline cases is the protection of the public, rather than the punishment of the erring attorney. *Id.*, citing *Attorney Grievance v. Steinberg*, 385 Md. 696, 703, 870 A.2d 603, 607 (2005) (other citations omitted). Nevertheless, we find that although most jurisdictions have the same purpose as we do, "[w]e have recognized that the public interest is served when this Court imposes a sanction which demonstrates to members of the legal profession the type of conduct that will not be tolerated. . . ." *Attorney Grievance v. Sperling*, 380 Md. 180, 191, 844 A.2d 397, 404 (2004) (quotations omitted).

Obviously, in so demonstrating, we are concerned with what sanction a lawyer in Maryland could expect in response to similar conduct, were it to have occurred in Maryland. We have consistently stated that when considering an appropriate sanction in a reciprocal discipline case, we are duty bound to look "not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct." *Weiss*, 389 Md. at 548, 886 A.2d at 616, quoting *Attorney Grievance Comm'n v. Parsons & Reback*, 310 Md. 132, 142, 527 A.2d 325, 330 (1987). In this

regard, and in an effort to avoid inconsistent sanctions, we need not follow the original jurisdiction's sanction when our cases demonstrate that we would apply a different sanction, had the conduct occurred or the case originated here. *Whitehead,* 390 Md. at 673, 890 A.2d at 757. "[W]e must balance our tendency to follow the original jurisdiction's sanction under our reciprocal discipline doctrine, against our prior cases and the sanctions imposed upon members of this Bar for similar misconduct committed in this jurisdiction, always with a view towards the protection of the public." *Weiss,* 389 Md. at 546, 886 A.2d at 614.

All this being said, we acknowledge that there have been cases in which we have deferred to the sanction of the original jurisdiction, despite the different sanction we may have imposed had the proceedings originated in this jurisdiction, *see Attorney Grievance v. Ayres–Fountain,* 379 Md. 44, 58–59, 838 A.2d 1238, 1246–47 (2003) (imposing identical three year suspension sanction as Delaware Supreme Court for the lawyer's knowing misrepresentations to that court regarding her certifications in annual tax filings even though the sanction that may have been imposed by this Court would not have been identical had the conduct occurred in Maryland); *Attorney Grievance Comm'n v. Gittens,* 346 Md. 316, 327, 697 A.2d 83, 88–89 (1997) (imposing identical indefinite suspension sanction of the District of Columbia Court of Appeals on an attorney who was convicted of theft of client funds from his escrow account citing that deference should be paid to the District of Columbia court).

We have, nevertheless, also declared that we have become "much less lenient towards any misconduct involving theft, misappropriation, fraud, or deceit." *Weiss,* 389 Md. at 551, 886 A.2d at 617. When attorney misconduct has been more serious, and "when the conduct involved is of such nature that it would not be tolerated from any member of the Bar in this State if the conduct occurred here," we have deviated from the original jurisdiction's sanction and imposed a more severe sanction. *Id.* at 551–52, 886 A.2d at 618, citing

*Attorney Grievance v. Dechowitz,* 358 Md. 184, 191, 193, 747 A.2d 657, 660–61 (2000) (substituting disbarment for California's sanction of suspension, after the attorney was convicted of possession of marijuana with intent to distribute); *Attorney Grievance v. White,* 354 Md. 346, 367, 731 A.2d 447, 459 (1999) (imposing disbarment instead of indefinite suspension for attorney's false testimony under oath). *See Attorney Grievance v. Beatty,* 409 Md. 11, 18, 972 A.2d 840, 843–44 (2009) (imposing indefinite suspension in a reciprocal discipline case on an attorney convicted of fourth degree stalking in New Jersey in spite of lesser sanction of three month suspension imposed by the Supreme Court of that state).

(Footnote in original).

Because the sanction imposed by the D.C. Court of Appeals, a one year suspension with six months suspended, is not within our spectrum of sanctions, we address what discipline to impose—a six month suspension, a one year suspension, or a more serious alternative, an indefinite suspension with the right to apply after readmittance to the D.C. Bar. We will impose an indefinite suspension.

Our review of the D.C. Court Rules persuades us that the D.C. Court of Appeals' Order is the functional equivalent to our sanction of indefinite suspension. More importantly, however, "exceptional circumstances" exist under Rule 16–773(e) as a result of the fact that were the conduct to have occurred in Maryland, an indefinite suspension would be imposed.

Under D.C. Bar Rule XI, disciplinary sanctions include "Suspension for an appropriate fixed period of time not to exceed three years" and may include terms of probation and conditions imposed upon reinstatement:

Section 3. *Disciplinary sanctions.*

(a) Types of discipline.—Any of the following sanctions may be imposed on an attorney for a disciplinary violation:

(1) Disbarment;

(2) Suspension for an appropriate fixed period of time not to exceed three years. Any order of suspension may

include a requirement that the attorney furnish proof of rehabilitation as a condition of reinstatement. In the absence of such a requirement, the attorney may resume practice at the end of the period of suspension;

(3) Censure;

(4) Reprimand;

(5) Informal admonition;

(6) Revocation or suspension of a license to practice as a Special Legal Consultant; or

(7) Probation for not more than three years. Probation may be imposed in lieu of or in addition to any other disciplinary sanction. Any conditions of probation shall be stated in writing in the order imposing probation. The order shall also state whether, and to what extent, the attorney shall be required to notify clients of the probation. The Board by rule shall establish procedures for the supervision of probation. Violation of any condition of probation shall make the attorney subject to revocation of probation and the imposition of any other disciplinary sanction listed in this subsection, but only to the extent stated in the order imposing probation.

(b) Conditions imposed with discipline.—When imposing discipline, the Court or the Board may require an attorney to make restitution either to persons financially injured by the attorney's conduct or to the Clients' Security Trust Fund (see Rule XII), or both, as a condition of probation or of reinstatement. The Court or the Board may also impose any other reasonable condition, including a requirement that the attorney take and pass a professional responsibility examination as a condition of probation or of reinstatement.

In this case, the D.C. Court of Appeals ordered that Respondent's suspension period of one year with six months suspended be conditioned upon maintaining a clean disciplinary record:

if a new complaint is filed against Respondent within one year of the date of the beginning of the period of suspension, and such complaint results in a finding that Respon-

dent violated the Rules of Professional Conduct, Respondent will be required to serve the remaining six months of the suspension consecutively with whatever other sanction may be imposed on him in the new matter or matters.

The Court also conditioned Respondent's reinstatement upon the return of his client's attorney's fees with interest prior to the expiration of this three-year probationary period. Respondent will not be reinstated to the D.C. Bar until the D.C. Court of Appeals finds that he has met their conditions of discipline and satisfactorily completed the requirements of probation.

We do not have an equivalent sanction option, permitting us to place Respondent on probation. An indefinite suspension, as laid out in Maryland Rule 16–721, appears to be its most appropriate equivalent:

**Rule 16–721. Sanctions and remedies for misconduct or incapacity.**

(a) **Professional misconduct.** One or more of the following sanctions or remedies may be imposed upon an attorney for professional misconduct:

(1) disbarment by the Court of Appeals;

(2) suspension by the Court of Appeals;

(3) reprimand by the Court of Appeals or, with the attorney's consent, by the Commission;

(4) conditional diversion in accordance with a Conditional Diversion Agreement entered into pursuant to Rule 16–736; and

(5) termination of a disciplinary or remedial proceeding accompanied by a warning pursuant to Rule 16–735(b).

(b) **Incapacity.** One of the following remedies may be imposed upon an attorney for incapacity:

(1) placement on inactive status, subject to further order of the Court, or

(2) conditional diversion in accordance with a Conditional Diversion Agreement entered pursuant to Rule 16–736.

(c) **Conditions.** An order, decision, or agreement that imposes a disciplinary sanction upon an attorney or places an attorney on inactive status may include one or more specified conditions, as authorized by Rules 16–736, 16–760, and 16–781.

*See also Attorney Grievance v. Beatty,* 409 Md. 11, 13–17, 972 A.2d 840, 841–43 (2009) (imposing indefinite suspension in reciprocal discipline case when New Jersey Supreme Court imposed three month suspension with conditions for readmission).

In determining the appropriate sanction, we also recognize the different framework within which we determine the appropriate sanction in misappropriation cases were the conduct to have occurred in Maryland, to insure consistency in our disciplinary actions. We have consistently stated that

when considering an appropriate sanction in a reciprocal discipline case, we are duty bound to look "not only to the sanction imposed by the other jurisdiction but to our own cases as well. The sanction will depend on the unique facts and circumstances of each case, but with a view toward consistent dispositions for similar misconduct."

*Gordon,* 413 Md. at 56, 991 A.2d at 57, quoting *Attorney Grievance v. Weiss,* 389 Md. 531, 548, 886 A.2d 606, 616 (2005). *See, e.g., Attorney Grievance v. Cafferty,* 376 Md. 700, 724, 831 A.2d 1042, 1057 (2003) (distinguishing D.C.'s "three-tiered categorization of misappropriation misconduct" from Maryland's two-tiered system in which we distinguish "between the intentional misappropriation of client funds and the misappropriation of client funds resulting from negligent or otherwise unintentional behavior").

In the instant case, the D.C. Hearing Committee found that Mr. Thaxton's misconduct was negligent, rather than intentional:

Respondent's misconduct was the product of poor judgment, in that his decision to settle the case without obtaining his client's consent was motivated by the imminent expiration of the statute of limitations in his client's claim; his failure to

promptly notify and pay Dr. Aazami or his client was based upon his poor law office management rather than a dishonest attempt to deprive them of their funds; and, Respondent's trust account records revealed that the balance in Respondent's trust account never fell below that which he owed Dr. Aazami or his client. . . .

In addition, the Hearing Committee found that "Respondent's failure to appear was based upon poor office management rather than a deliberate attempt to frustrate the operations of the court."

When there has been a finding of *intentional* misappropriation, we typically impose the sanction of disbarment. When a violation of Rule 8.4(d) has "fallen short of proof of fraudulent intent," however, and there is a finding that the attorney engaged in *negligent* misappropriation without the clear intent to defraud clients, we have imposed a less severe sanction. *Attorney Grievance v. Sweitzer,* 395 Md. 586, 601, 911 A.2d 440, 449 (2006) (citations omitted).

In *Beatty,* we held that when an indefinite suspension would be the appropriate sanction in the case, even if the original state court allowed the Respondent to resume practice immediately following the expiration of his suspension, "[i]t would be grave injustice in allowing a member of this Bar to . . . be given a lesser sanction because another jurisdiction did so, while other members of the Maryland Bar would be sanctioned more severely." *Beatty,* 409 Md. at 18, 972 A.2d at 843–44, quoting *Weiss,* 389 Md. at 555, 886 A.2d at 620. In this regard, we note that in similar cases in Maryland with Rule 8.4(d) violations, we have imposed the sanction of an indefinite suspension. *See, e.g., Attorney Grievance v. Zuckerman,* 386 Md. 341, 872 A.2d 693 (2005); *Attorney Grievance v. Seiden,* 373 Md. 409, 818 A.2d 1108 (2003).

In *Zuckerman,* 386 Md. at 341, 872 A.2d at 693, we indefinitely suspended an attorney and granted him the right to reapply after thirty days after finding that his lack of established procedures to properly maintain his trust account led to his routine failure to deposit trust money in his trust account,

failure to pay clients, medical providers, and himself money due from personal injury settlements, and failure to notify clients and medical providers that he was holding funds for them. We found that Mr. Zuckerman's actions were negligent, rather than intentional, because "there [was] no evidence that [he] acted with an intent to steal money," he did not benefit personally from the misappropriation of the funds, and "none of his clients suffered any financial loss...." *Id.* at 379, 872 A.2d at 716.

In *Seiden*, 373 Md. at 409, 818 A.2d at 1108, we reviewed the actions of an attorney who, while acting as the representative of an estate, deposited his client's settlement check into his escrow account and deducted his fee without submitting a fee petition to the Orphans Court and without his client's written consent. We found that Mr. Seiden "may have failed to follow proper procedures, but his conduct did not rise to that of an intentional misuse of his client's funds," because he did not have "the requisite intent to constitute intentional misappropriation or theft," and was neither "dishonest [n]or deceitful." *Id.* at 423, 818 A.2d at 1116. As a result of his negligent misappropriation, and a record "replete with mitigating evidence" including his 24–year clean disciplinary record, remorse, and prolonged illness, we imposed the sanction of an indefinite suspension with the right to reapply after thirty days. *Id.* at 424–25, 818 A.2d at 1117.

We conclude that because Thaxton negligently misappropriated settlement funds and interfered with the administration of justice, his violations of Rules 1.2(a), 1.4(a)(2) and (3), 1.4(b), 1.5(c), 1.15(a), 1.15(d), 1.15(e), and 8.4(d) of the MRPC are akin to the attorneys' actions in *Zuckerman* and *Seiden*, thereby warranting an indefinite suspension in Maryland with the right to apply for readmission in Maryland after reinstatement to the Bar of the District of Columbia.

IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, PURSUANT TO RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE

ATTORNEY GRIEVANCE COMMISSION OF MARY-
LAND AGAINST RONNIE THAXTON.

