803 A.2d 505

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**Mario C. SANTOS.**

**Misc. AG No. 31 Sept. Term 2001.**

Court of Appeals of Maryland.

July 19, 2002.

Melvin Hirshman, Bar Counsel and James P. Botluk, Assistant Bar Counsel for the Attorney Grievance Commission of Maryland.

Mario C. Santos, Glen Burnie, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, JJ.

BELL, C.J.

In this disciplinary action, prompted by complaints of clients for whom Mario C. Santos, the respondent, undertook representation, and a referral from a Bankruptcy Judge, the Attorney Grievance Commission of Maryland, the petitioner, acting through Bar Counsel, in turn acting at the direction of the Review Board, *see* Maryland Rule 16–709,[1] filed a Petition For Disciplinary Action against the respondent, charging the respondent with multiple violations of various of the Maryland Rules of Professional Conduct, as adopted by Maryland Rule 16–812. Based on the complaint of the clients and of Bar Counsel, the respondent was alleged to have violated Rules 1.1 Competence,[2] 1.3, Diligence,[3] 1.4, Communication,[4] 1.15, Safe-

---

1. Until June 30, 2001, Maryland Rule 16–709, as relevant, provided:
   "a. Who may file. Charges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board."
   Adopted November 30, 2000, effective July 1, 2001, Maryland Rule 16–741 now governs the filing of statements of charges. It provides:
   "(a) Filing of Statement of Charges.
   "(1) Upon completion of an investigation, Bar Counsel shall file with the Commission a Statement of Charges if Bar Counsel determines that:
   "(A) the attorney either engaged in conduct constituting professional misconduct or is incapacitated;
   "(B) the professional misconduct or the incapacity does not warrant an immediate Petition for Disciplinary or Remedial Action;
   "(C) a Conditional Diversion Agreement is either not appropriate under the circumstances or the parties were unable to agree on one; and
   "(D) a reprimand is either not appropriate under the circumstances or (i) one was offered and rejected by the attorney, or (ii) a proposed reprimand was disapproved by the Commission and Bar Counsel was directed to file a Statement of Charges."

2. Rule 1.1 provides:
   "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

3. Pursuant to Maryland Rule 1.3, "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

4. Maryland Rule 1.4 requires a lawyer to "keep a client reasonably

keeping Property,[5] 1.16 Declining or Terminating Representation,[6] 8.1(b), Bar Admission and Disciplinary Matters,[7] 8.4(c) and (d), Misconduct,[8] and 16–604, Trust Account—Required Deposits,[9]

---

informed about the status of a matter and promptly comply with reasonable requests for information."

5. Maryland Rule 1.15 provides, as relevant:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation."

6. As pertinent, Rule 1.16 provides:

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law."

7. Maryland Rule 8.1(b) provides:

"An applicant for admission to or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
* * * *
"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6 [pertaining to the confidentiality of information]"

8. Rule 8.4, in relevant part, provides:

"It is professional misconduct for a lawyer to:
* * * *
"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
"(d) engage in conduct that is prejudicial to the administration of justice."

9. Maryland Rule 16–604 provides:

We initially referred the case to the Honorable Pamela L. North, of the Circuit Court for Anne Arundel County, but subsequently transferred it to the Honorable William D. Quarles, of the Circuit Court Baltimore City, for hearing. Rule 16–709(b).[10] At the hearing, each of the former clients, Ms. Michelle A. Hipp, Mr. Moses Jackson, Jr., Ms. Eula Lee Hudnall, Mr. Dexter L. Keane, and Ms. Kathleen Sheppard, whose matters the respondent is alleged to have neglected and abandoned, testified, after which Judge Quarles made findings of fact and drew conclusions of law. *See* 16–711(a).[11] He concluded from the facts found that the respondent committed each of the rule violations charged, except Rule 8.4(c).[12]

---

"Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person."

10. Rule 16–709(b) provided:
"Charges against an attorney shall be filed on behalf of the Commission in the Court of Appeals. The Court of Appeals by order may direct that the charges be transmitted to and heard in any court and shall designate the judge to hear the charges and the clerk responsible for maintaining the record in the proceedings."
Effective July 1, 2001, the applicable rule is Rule 16–752. Captioned "Order Designating Judge," it provides:
"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

11. Maryland Rule 16–711(a) provides:
"(a) Findings. A written statement of the findings of facts and conclusions of law shall be filed in the record of the proceedings and copies sent to all parties."
See Rule 16–757, effective July 1, 2001.

12. The hearing judge made no findings at all as to Rule 8.4(c). No exception having been taken by the petitioner, his failure affirmatively

In the case of Ms. Sheppard, the respondent, the hearing judge found, was retained to handle a bankruptcy matter. Although the respondent filed the petition, he did not appear at the hearing on the creditor's motion to lift the bankruptcy stay, with the result that the court denied confirmation of Ms. Sheppard's plan. The court also referred the respondent to Bar Counsel. The fee she paid was refunded to Ms. Sheppard.

The respondent represented Ms. Hipp in divorce and bankruptcy matters, beginning in November 1999, for which he was paid a total of $1,900, $1,725 of which Ms. Hipp borrowed from her father. The respondent filed neither the bankruptcy petition, which he had Ms. Hipp complete, nor divorce proceedings. Not only did the respondent fail to return Ms. Hipp's numerous phone calls, he did not return any portion of the fee that she paid.

Mr. Jackson retained the respondent, in November 1999, to obtain a name change for his stepson, paying him a total of $550.00. The respondent filed the petition for change of name, but did not complete the matter, offering excuses when asked as to why it had not been concluded. When Mr. Jackson was informed by court personnel that, although the petition had been filed, it would have to be refiled if not acted upon within a year, he sought, without success, to contact the respondent. Mr. Jackson ultimately had to pay another attorney another fee, $500.00, to re-file the petition and complete the name change. The respondent did not return any of the fee that he was paid.

On August 31, 1999, Ms. Hudnall retained the respondent to represent her in a bankruptcy matter, paying him $675.00. Although he obtained the necessary information to file the bankruptcy petition, he did not do so and, as a result, she continued to receive calls from her creditors and was sued by one of them. The respondent stopped returning Ms. Hud-

---

to find a violation may, by implication, constitute a finding that the respondent did not violate that rule.

nall's telephone calls in November 2000. Ms. Hudnall was required to retain another attorney to handle the bankruptcy matter, borrowing $700.00 to do so. She has not been repaid any portion of the fee she paid the respondent.

Mr. Keane, a truck driver, retained the respondent on December 6, 1999 to represent him in a drunk driving case. He paid the respondent $750.00 of a $2000.00 fee. Despite assuring Mr. Keane that he would "take care of everything," the respondent failed to appear at a Motor Vehicle Administration hearing and Mr. Keane's license was suspended. Thereafter, Mr. Keane tried unsuccessfully, for three months, to contact the respondent, finally retaining other counsel to represent him. The respondent has not returned any of the fee he was paid.

As indicated, the hearing judge concluded that the respondent violated the various rules charged. Specifically, he determined that he violated Rule 1.1 by incompetently representing each of his clients by not demonstrating the necessary skill, thoroughness and preparation in the handling of their matters. "[T]he Respondent's procrastination prejudiced the interests of [Hipp, Hudnall and Jackson] by denying relief to which each was entitled," in violation of Rule 1.3. From the respondent's failure to communicate with each client about his or her matter, the hearing judge found a violation of Rule 1.4 and from his abandonment of the representation of each of them without providing the requisite notice, a violation of Rule 1.15. The respondent admitted depositing all of the funds he received from clients, including unearned fees and expenses, into his operating account and, thus, the violation of Rules 1.15 and 16–604. Each of the "previously described violations of the rules of professional conduct erode public confidence in the legal profession and are conduct prejudicial to the administration of justice in violation of Rule 8.4(d)," the hearing judge concluded.

In addition, the hearing judge made general findings, as follows (citations omitted):

"The Petitioner's investigator has characterized the Respondent as 'forthright, candid and cooperative' during the investigation.... The investigator has observed that Mr. Santos had 'been having difficulty operating a solo practice.'... The investigator also concluded that Mr. Santos 'needed a more structured environment, he needed more support staff, he needed direct assistance.' ... The Respondent has acknowledged the correctness of the investigator's analysis, 'I'm not a great businessman, I can't drum up business, I can't run things, I can't be the boss. But I can be a good trial lawyer, and I am a good trial lawyer.' ... All fees received by the Respondent were deposited into his operating account....

"Mr. Santos was unable to explain his neglect of his clients' matters beyond his assertion that he had 'generally los[t] track' of matters.... He also described his 'dread' of returning his clients' telephone calls. ... His neglect was exacerbated by undiagnosed physical and mental health problems, his mother's health problems, and the dissolution of his sister's marriage. ... His sister's divorce also led to the loss of the Respondent's housing. ...

In recognition of his need for a more structured environment, the Respondent has sought employment with the Public Defender's Office.... That office has extended a job offer to Mr. Santos...."

Neither party filed exceptions to the findings of fact and conclusions of law. Both, however, filed a recommendation for sanctions: the petitioner's urging the respondent's disbarment and the respondent's, a period of suspension of not more than six months and reinstatement upon compliance with certain conditions.

While cognizant that the respondent has no prior disciplinary history, noting that the respondent neglected and essentially abandoned five clients, never returned unearned fees, advanced costs in four of these cases, and failed to hold client funds in a trust account, the petitioner contends that "Respondent's utter neglect and abandonment of his clients' cases

demonstrate that he is unfit to practice law." Acknowledging that we have suspended, indefinitely, with the right to apply for reinstatement after a specific period of time, attorneys who have neglected client matters and then failed to refund unearned fees, *Attorney Griev. Comm'n v. Brugh*, 353 Md. 475, 727 A.2d 913 (1999) (after sixty days); *Attorney Griev. Comm'n v. Drew*, 341 Md. 139, 669 A.2d 1344 (1996) (after one year); *Attorney Griev. Comm'n v. David*, 331 Md. 317, 628 A.2d 178 (1993) (after six months), it directs the Court's attention to cases in which disbarment was ordered for misappropriation of client funds by failing to refund unearned fees, *Attorney Griev. Comm'n v. Bloom*, 306 Md. 609, 510 A.2d 589 (1986); *Attorney Griev. Comm'n v. Harper*, 300 Md. 193, 477 A.2d 756 (1984), and those in which that sanction was imposed on attorneys who repeatedly neglected client matters. *Attorney Griev. Comm'n v. Montgomery*, 318 Md. 154, 567 A.2d 112 (1989), *Attorney Griev. Comm'n v. Howard*, 299 Md. 731, 475 A.2d 466 (1984); *Attorney Griev. Comm'n v. Pollack*, 279 Md. 225, 369 A.2d 61 (1977); *Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 347 A.2d 556 (1975). The petitioner relies most heavily on *Attorney Griev. Comm'n v. Wallace*, 368 Md. 277, 793 A.2d 535 (2002); *Attorney Grievance Comm'n v. Milliken*, 348 Md. 486, 704 A.2d 1225 (1998); *Attorney Griev. Comm'n v. Manning*, 318 Md. 697, 569 A.2d 1250 (1990). None is apposite.

In *Manning*, there was a prior disciplinary history, the attorney in that case having earlier been suspended for similar conduct. In the other cases, the conduct being sanctioned was much more egregious than the very serious misconduct in this case. In *Milliken*, we described the attorney's conduct:

"The hearing judge found that Respondent engaged in egregious misconduct that amounted to 'fraud, deceit and misrepresentation.' His clients suffered severe detriment. He repeatedly neglected client matters and failed to take steps to protect client interests. Respondent repeatedly failed to apprise clients honestly of the status of their cases, and in effect, repeatedly lied to his clients. In failing to provide proper representation, he misled his clients into

believing that their matters were being appropriately handled. He did not refund advance payment of fees that had not been earned and, on more than one occasion, he shared fees with a non-lawyer. When sued by a client for the return of the unearned fee, he did not appear in court, and subsequently ignored the default judgment simply because he felt the judgment was unwarranted.

"Respondent violated Maryland Rules BU7 and BU9 by drawing instruments payable to cash on his attorney trust account, by making cash disbursements from his trust account, and by allowing fee income to accumulate in his attorney trust account. He deposited and held funds for non-clients in his trust account, thereby commingling client funds with personal and non-client funds. In writing checks from the trust account directly to his wife, he used trust funds for unauthorized purposes. He also failed to keep complete records of his trust account. In addition to his pattern of misconduct and neglect of client matters, Respondent failed to cooperate with Bar Counsel. He repeatedly refused to answer Bar Counsel's letters."

348 Md. at 516–17, 704 A.2d at 1240.

As in the case sub judice, the attorney in *Wallace* had no prior disciplinary history. We disbarred him nevertheless, because

"The record in the case at bar does not indicate that respondent had received any previous reprimands or sanctions from this Court; nevertheless, the volume and severity of the complaints against respondent lead us to conclude that the appropriate sanction against respondent is disbarment. Respondent has engaged in a pattern of conduct that only the most sever[e] sanction of disbarment will provide the protection to the public that this procedure is supposed to provide. Respondent's lack of diligence, his · lack of preparation, his failure to communicate with his clients, his charging of unreasonable fees, his failure to account for and return monies, his misrepresentations, and his failure to

comply with Bar Counsel's requests all lead to the most severe sanction of disbarment."

368 Md. at 293, 793 A.2d at 545.

Realizing that a sanction should be imposed, and thus accepting responsibility for his misconduct, the respondent is willing to accept, and, therefore, recommends a short suspension, not to exceed six months.

In contemplating the appropriate sanction to be imposed in this case, we are mindful that the purpose of disciplinary proceedings, is to protect the public, and so too must the sanctions that flow from them. *Attorney Griev. Comm'n v. Hayes*, 367 Md. 504, 519, 789 A.2d 119, 124 (2002); *Attorney Griev. Comm'n v. Jeter*, 365 Md. 279, 289, 778 A.2d 390, 396 (2001); *Attorney Griev. Comm'n v. Bernstein*, 363 Md. 208, 226, 768 A.2d 607, 616–17 (2001); *Attorney Grievance v. Koven*, 361 Md. 337, 343, 761 A.2d 881, 884 (2000). The decision must take account of the facts and circumstances of the case, *Attorney Griev. Comm'n v. Tolar*, 357 Md. 569, 585, 745 A.2d 1045, 1053 (2000), including the respondent's prior spotless record, see *Attorney Griev. Comm'n v. Franz*, 355 Md. 752, 762–63, 736 A.2d 339, 344 (1999); *Maryland State Bar Ass'n v. Phoebus*, 276 Md. 353, 362, 347 A.2d 556, 561 (1975), and the respondent's candor and remorse. *Hayes*, 367 Md. at 520, 789 A.2d at 129.

In this case, as we have seen, disbarment is the preferred sanction of the petitioner because, in part, it views the respondent's failure to return unearned fees as being a misappropriation, the ordinary and usual sanction for which is disbarment. The general rule is, "disbarment will inevitably follow any unmitigated misappropriation of client, or any third party's funds." *Hayes*, 367 Md. at 512–13, 789 A.2d at 124, and the cases therein cited. This Court, and quite recently, has said that the question whether there has been a misappropriation is entrusted to determination by the hearing court and, thus, its findings on that point are important. *Id.* at 513, 789 A.2d at 124. Here, the hearing judge did not find a violation of Rule 8.4(c) and he specifically did not characterize

the respondent's failure to return unearned fees as dishonest or fraudulent or done with intent to defraud. On the contrary, he referred to the conduct as "neglect." It also is significant, in this regard, that, according to the general findings of fact, the petitioner's investigator did not view the respondent's misconduct as dishonest or fraudulent. And, as already indicated, the petitioner did not except to the hearing judge's findings of fact and conclusions of law.

These factors do not support imposition of the ultimate sanction of disbarment.

We also look to the American Bar Association Standards for Imposing Lawyer Sanctions (1986) for assistance in determining the proper sanction. Standard 5.11 provides that:

"Disbarment is generally appropriate when:

"(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

Application of the Standards to the case *sub judice* confirms that an indefinite suspension, rather than disbarment, is the appropriate sanction.

The respondent has recommended that certain specified conditions be imposed and met before his reinstatement to the practice of law. In *Attorney Griev. Comm'n v. Black,* 362 Md. 574, 580, 766 A.2d 119, 123 (2001), responding to the petitioner's recommendation that we set out the conditions the respondent had to meet for reinstatement, we said:

"We decline ... the petitioner's invitation to delineate specific conditions of reinstatement, except the payment of

costs, a condition in any event, whether stated or not, preferring to reserve to ourselves the broadest discretion to review, at the time of application, the respondent's fitness for reinstatement. By not specifying a monitor, or any of the other recommended conditions, as prerequisite for reinstatement, however, we do not mean to suggest that they are not appropriate or should not be done. We simply will not now express an opinion on the matter of what is, or will be, required for reinstatement."

With the exception of specifying that repayment of unearned fees, or satisfactory arrangements for doing so, will be required, we believe that response to be the appropriate one in this case, as well.

The respondent is ordered indefinitely suspended from the practice of law. He may apply for reinstatement after 90 days. The suspension shall take effect 30 days from the date of the filing of the opinion.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST MARIO C. SANTOS.