51 A.3d 565

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

**v.**

**Harry TUN.**

**Misc. Docket AG No. 71, Sept. Term, 2011.**

Court of Appeals of Maryland.

Aug. 22, 2012.

Reconsideration Denied Dec. 11, 2012.

Marianne J. Lee, Asst. Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for petitioner.

Ross D. Hecht, Esq. of College Park, MD, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

HARRELL, J.

This reciprocal discipline action arises from a proceeding initiated by the District of Columbia Bar Counsel ("D.C. Bar Counsel") against Respondent, Harry Tun, for overbilling the District of Columbia Superior Court ("Superior Court") for legal services rendered to indigent defendants in criminal cases. Between 1999 and 2003, Tun, an experienced defense lawyer who accepted a substantial number of appointments to represent indigent defendants, submitted 162 vouchers seeking payment for the same time period for two or more clients. A Superior Court judge reviewing Tun's vouchers became suspicious when he discovered an incident of double-billing. The Superior Court referred the matter to the United States Attorney for the District of Columbia, who declined to prosecute the case, but required Tun to self-report the misconduct to D.C. Bar Counsel. Tun "self-reported," as required. D.C. Bar Counsel initiated an investigation and filed charges against Tun. The D.C. Court of Appeals issued an order approving a petition for negotiated discipline in which Tun admitted violating D.C. Rules of Professional Conduct (D.C. RPC) 1.5(a)[1] and (f)[2] (Fees); 3.3(a)(1)[3] (Candor Toward the

---

**1.** D.C. RPC 1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.

The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

**2.** D.C. RPC 1.5(f) states that "[a]ny fee that is prohibited by paragraph (d) or by law is *per se* unreasonable." D.C. RPC 1.5(d) states that "[a]

Tribunal); and 8.4(c) and (d)[4] (Misconduct).[5] As a conse-
quence, Tun was suspended from the practice of law in the
District of Columbia for 18 months, with six-months stayed,
followed by a one-year probationary period, during which
certain conditions were to be met.

Petitioner, the Maryland Attorney Grievance Commission,
acting through Bar Counsel, filed a petition for disciplinary or
remedial action against Tun (because he was admitted also in
Maryland) based on the misconduct supporting the D.C. RPC
violations. As in the present case, when we do not have
available an identical sanction in our regulatory scheme to the
one imposed by the D.C. Court of Appeals, we evaluate which
sanction in our arsenal and precedents would be applied had
the attorney's conduct occurred in Maryland. Thus, we sus-
pend indefinitely Tun from the practice of law in Maryland,
with the right to reapply after he is re-admitted unconditional-
ly to the Bar of the District of Columbia.

## FACTS AND PROCEDURAL BACKGROUND

Tun stipulated to the facts alleged by D.C. Bar Counsel and
the parties entered into negotiated discipline for Tun's admit-

---

lawyer shall not enter into an arrangement for, charge, or collect a
contingent fee for representing a defendant in a criminal case."

3.  D.C. RPC 3.3(a)(1) provides that "A lawyer shall not knowingly ...
make a false statement of fact or law to a tribunal or fail to correct a
false statement of material fact or law previously made to the tribunal
by the lawyer."

4.  D.C. RPC 8.4 provides "It is professional misconduct for a lawyer to
... (c) engage in conduct involving dishonesty, fraud, deceit, or misrep-
resentation; (d) engage in conduct that seriously interferes with the
administration of justice."

5.  D.C. Bar Rule XI, § 12.1 provides, in relevant part:
    (a) *Availability of negotiated discipline.*
    An attorney who is the subject of an investigation by Bar Counsel, or
    of a pending petition under section 8(c) of this rule charging miscon-
    duct, may negotiate with Bar Counsel a disposition of the charges
    and sanction at any time before a Hearing Committee has submitted
    to the Board a report containing its findings and recommendation
    with respect to discipline.

ted violations of D.C. RPC 1.5(a) and (f); 3.3(a)(1); and 8.4(c) and (d). The Amended Petition[6] for Negotiated Discipline included the following stipulated facts:

1. Between 1999 and 2003, Respondent practiced criminal defense law. As part of his practice, he accepted appointments from the Superior Court of the District of Columbia ("Superior Court"), pursuant to the District of Columbia Criminal Justice Act, D.C.Code § 11–2601 *et seq.* (2001 ed)("CJA"), to advise and represent indigent criminal defendants in the Superior Court.

2. When the Superior Court appointed Respondent to represent an indigent criminal defendant, it would issue a court order, pursuant to the CJA, to that effect. The order incorporated and included a form entitled "Appointment and Voucher for Legal Services–Initial Claim" ("voucher"), so that Respondent could claim payment for legal services that he rendered to his clients. The voucher included spaces and sections for Respondent to itemize his time, expenses and compensation claimed on the case. The voucher also included on its face an oath and affirmation of the correctness of the claimed compensation, with a line for Respondent's signature.

3. After certain intervals in a case, or upon completion of a case, Respondent would fill out a voucher claiming payment for services rendered in that case, swear to its truthfulness and correctness by signing a verification clause on the face of the voucher, and turn the voucher in to the Superior Court for processing and payment.

4. Between 1999 and 2003, Respondent submitted 162 vouchers to the Superior Court claiming payment for legal services rendered to indigent defendants. In each voucher,

6. Tun and D.C. Bar Counsel reached agreement on an earlier petition for negotiated discipline, which was rejected by the D.C. Court of Appeals, based on the Board of Professional Responsibility's recommendation. The earlier petition was rejected because the proposed sanction of a nine-month suspension would have been inadequate, in the Board's view, in light of the number of violations and the extended time period over which the violations occurred.

Respondent would set forth the time he started and stopped working for a particular client for each day he claimed payment. A review of the vouchers that Respondent submitted between 1999 and 2003 reflects that Respondent sought payment for the same time period for two or more clients on 162 occasions. As a result of the double billing for multiple clients, Respondent sought and received payment for 1,180.25 hours of services he did not provide, or that he did not provide at the time that he claimed.

\*　　\*　　\*

6. A judge of the Superior Court became concerned about the accuracy of Respondent's vouchers and notified the Chief Judge, who then referred the matter to the United States Attorney's Office for the District of Columbia for investigation. During the course of the United States Attorney's investigation, Respondent provided evidence that he had rendered legal services in CJA cases and for which he had never submitted vouchers. Although the United States Attorney's Office determined that it would not proceed with criminal prosecution of Respondent, Respondent and the United States Attorney's Office agreed that Respondent would remove himself from the Superior Court's list of attorneys who accept court-appointed cases, and he repaid $16,034 (representing time that Respondent had double billed minus a reasonable estimate that he could have but failed to bill for other court-appointed matters) to the Superior Court.

7. Respondent's conduct violated the following Rules of Professional Conduct:

　　a. Rule 1.5(a) and (f), in that Respondent charged a fee that was prohibited by law and therefore *per se* unreasonable.

　　b. Rule 3.3(a)(1), in that Respondent made a false statement of material fact or law to a tribunal;

　　c. Rule 8.4(c), in that Respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation; and

    d.   Rule 8.4(d), in that Respondent engaged in conduct that seriously interfered with the administration of justice.

During a limited hearing before the D.C. Board of Professional Responsibility Hearing Committee Number Six, the parties stipulated to the following additional findings of fact and conclusions:

a.   Respondent's record-keeping was abysmal.

b.   When Respondent signed the vouchers, he knew that he had not checked to make sure that the details for the entries on the voucher "matched up," but he did not have the records to be able to do so. . . .

c.   Respondent knew that when he signed the vouchers he was making misrepresentations, because he did not check the facts to make sure the entries were accurate when he filed the documents. . . . However, Respondent did not have records accurate enough to check these vouchers. . . .

d.   Because Respondent did not verify that the vouchers were correct, that is a misrepresentation. . . .

e.   Respondent recklessly maintained inadequate time records and consciously disregarded the risk that he might be overcharging the CJA fund in a specific case. . . .

f.   In the aggregate, Respondent did not accept any funds from the District of Columbia that he was not entitled to receive if he had correctly filled out the vouchers to reflect the work he had performed. . . .

g.   Respondent was entitled to the compensation he sought, but he failed to document accurately the services he had provided.

The D.C. Court of Appeals approved the petition for negotiated discipline on 11 August 2011 and suspended Tun from the practice of law in the District of Columbia for 18 months, with six months of the suspension stayed, followed by one year of probation with conditions as agreed to by Tun and Bar Counsel. *In re Harry Tun,* 26 A.3d 313 (D.C.2011). The probation conditions included a mandatory practice monitor, obtained through the Practice Management Advisory Service

of the D.C. Bar, who will submit reports every two months to the D.C. Bar Counsel containing a "full assessment of [Tun's] business structure and his practice, including but not limited to reviewing financial records, invoices, client files, engagement letters, supervision and training of staff, and responsiveness to clients." If Tun fails to comply with the terms of his probation, the stay of the six-months of the total suspension is lifted, the additional six-month suspension is imposed, and Tun then must show fitness to practice as a condition of his reinstatement.

Concomitantly, on 19 October 2011, the United States Court of Appeals for the Fourth Circuit (before which Tun was admitted) issued, under reciprocal discipline principles, an order suspending Tun from the practice of law for 18 months, continuing until he is readmitted to the Bar of the District of Columbia and petitions the Fourth Circuit Court for readmission. On 22 November 2011, the United States District Court for the District of Maryland suspended Tun for 18 months, with six months stayed, followed by a one-year period of supervised probation, according to the conditions provided in the D.C. Court of Appeals's order suspending Tun.

Bar Counsel in Maryland, for its part, filed a petition for disciplinary or remedial action pursuant to Maryland Rules 16–751(a)(2) [7] and 16–773(b),[8] charging Tun, also admitted to practice in Maryland, with violations of the analogous Maryland Lawyers' Rules of Professional Conduct (MLRPC)

---

**7.** Maryland Rule 16–751(a)(2) provides, in relevant part:

Conviction of crime; reciprocal action. If authorized by Rule 16–771(b) or 16–773(b), Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals without prior approval of the Commission.

**8.** Maryland Rule 16–773(b) provides, in relevant part:

Petition in Court of Appeals. Upon receiving and verifying information from any source that in another jurisdiction an attorney has been disciplined or place on inactive status based on incapacity, Bar Counsel may file a Petition for Disciplinary or Remedial Action in the Court of Appeals pursuant to Rule 16–751(a)(2).

1.5(a) [9] (Fees); 3.3(a)(1) [10] (Candor Toward the Tribunal); and 8.4(c) and (d) (Misconduct),[11] based on the findings of fact and conclusions of law that underlaid the D.C. RPC violations. We issued a Show Cause order on 23 January 2012 to Tun and Bar Counsel requiring them to provide, in writing, any grounds for why corresponding discipline should not be imposed by this Court. Both parties responded in writing and the Court heard oral argument on 6 June 2012. Bar Counsel recommended that Tun be suspended indefinitely from the practice of law in Maryland. Tun requested that this Court impose lesser discipline, "i.e. six month suspension with same conditions imposed by [the] District of Columbia Court of Appeals" or, alternatively, to impose identical discipline to that imposed by the D.C. Court of Appeals.

---

9. MLRPC 1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses.

The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client.

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

Maryland does not have a rule corresponding to D.C. RPC 1.5(f).

10. MLRPC 3.3(a)(1) provides that "A lawyer shall not knowingly … make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

11. MLRPC 8.4 provides "It is professional misconduct for a lawyer to … (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice."

## STANDARD OF REVIEW

■ This Court has "original and complete jurisdiction over attorney disciplinary proceedings." *Att'y Griev. Comm'n v. Weiss,* 389 Md. 531, 544, 886 A.2d 606, 613 (2005); *Att'y Griev. Comm'n v. Tayback,* 378 Md. 578, 585, 837 A.2d 158, 162 (2003). In an action for reciprocal discipline, we treat as conclusive evidence of attorney misconduct from "a final adjudication in a disciplinary or remedial proceeding by another court, agency, tribunal." Md. Rule 16–773(g); *see also Att'y Griev. Comm'n v. Thaxton,* 415 Md. 341, 361, 1 A.3d 470, 482 (2010); *Att'y Griev. Comm'n v. Whitehead,* 390 Md. 663, 669, 890 A.2d 751, 754 (2006). This does not preclude, however, Bar Counsel or the attorney from "introducing additional evidence or preclude the attorney from introducing evidence or otherwise showing cause why no discipline or lesser discipline should be imposed." Md. Rule 16–773(g).

## DISCUSSION

■ Tun admitted submitting vouchers to the Superior Court seeking payment for services rendered during the same time period for two or more clients on 162 occasions. He admitted also that, although the "double-billing" was the result of his "abysmal record-keeping," the misconduct violated D.C. RPC 1.1(a) and (f), 3.3(a)(1), and 8.4(c) and (d). Because we accept the findings and conclusions of the D.C. Court of Appeals that Tun violated the D.C. RPC as conclusive evidence of his violation of the corresponding MLRPC, we consider only what is the most appropriate reciprocal sanction in Maryland. In deciding what is the appropriate sanction in a reciprocal discipline action, we balance "our tendency to follow the original jurisdiction's sanction under our reciprocal discipline doctrine, against our prior cases and the sanctions imposed upon members of this Bar for similar misconduct committed in this jurisdiction, always with a view towards the protection of the public." *Weiss,* 389 Md. at 546, 886 A.2d at 614. As we explained in *Whitehead,* Maryland Rule 16–773(f) is permissive in its directions, rather than mandatory, stating

that we *"may* impose corresponding discipline, not that we *shall* impose identical discipline." *Thaxton,* 415 Md. at 362, 1 A.3d at 483 (internal quotation omitted).

Maryland Rule 16–721 provides five possible sanctions for attorney misconduct under our regulatory scheme, including:

(1) disbarment by the Court of Appeals;

(2) suspension by the Court of Appeals;

(3) reprimand by the Court of Appeals or, with the attorney's consent, by the Commission;

(4) conditional diversion in accordance with a Conditional Diversion Agreement entered into pursuant to Rule 16–736; and

(5) termination of a disciplinary or remedial proceeding accompanied by a warning pursuant to Rule 16–735(b).

In the present case, none of these sanctions (as amplified elsewhere in our Rules) correspond precisely to the 18–month suspension, with six months stayed, followed by one year of probation with conditions, as imposed by the D.C. Court of Appeals.[12] This was also the case in *Thaxton,* where the D.C. Court of Appeals imposed a one-year suspension, with six months stayed, for misappropriation of settlement funds, in violation of D.C. RPC 1.2(a), 1.14(a) and (3), 1.4(b), 1.5(c), 1.15(a) and (3), and 8.4(d). 415 Md. at 343, 365, 1 A.3d at 472, 484. After reviewing cases of similar misconduct in Maryland attorney discipline cases, we concluded that the sanction imposed by the D.C. Court of Appeals was the "functional equivalent to our sanction of indefinite suspension." *Thaxton,*

---

**12.** Our Rules, although alluding to conditions that may be appended to sanctions (Md. Rule 16–721(c) and 16–760(h)) and probation after reinstatement (Rule 16–760(h)), do not contemplate or authorize stays of portions of a suspension, whether indefinite or for a fixed period. The closest we come to the concept of a stay of a part of a period of suspension is deferral of the effective date "to allow the respondent a reasonable opportunity to comply with requirements of section (c) of this Rule." Md. Rule 16–760(a). Maryland Rule 16–760(c) sets out the obligations of an attorney for winding-down administratively his or her practice before commencing a disbarment, suspension, or going on inactive status.

415 Md. at 365, 1 A.3d at 485. We concluded also that "exceptional circumstances" under Maryland Rule 16–773(e) existed because, had Thaxton's conduct occurred in Maryland, we would have imposed an indefinite suspension. *Id.* We considered also the contrast between Maryland's two-tired approach that distinguishes "between the intentional misappropriation of client funds and the misappropriation of client funds resulting from negligent or otherwise unintentional behavior" and D.C.'s three-tiered system for categorizing misappropriation misconduct. *Thaxton,* 415 Md. at 368, 1 A.3d at 486 (internal quotations omitted) (citing *Att'y Griev. Comm'n v. Cafferty,* 376 Md. 700, 724, 831 A.2d 1042, 1057 (2003)). The District of Columbia recognizes three separate categories of misappropriation: reckless, intentional, and negligent. *In re Carlson,* 802 A.2d 341, 348 (D.C.2002).

As in *Thaxton,* we conclude in the present case that "exceptional circumstances," as meant in Maryland Rule 16–773(e), exist. Tun's conduct, had it occurred in Maryland, would warrant a different sanction before this Court than that imposed by the D.C. Court of Appeals. This Court strives to impose internally consistent sanctions for similar attorney misconduct. Thus, we evaluate our precedent to determine the appropriate sanction for Tun's admitted misconduct. Under Maryland's two-tiered system, intentional misappropriation warrants disbarment ordinarily, but where the conduct was unintentional or due to negligence, indefinite suspension is the appropriate sanction usually. *See, e.g., Cafferty,* 376 Md. at 724, 831 A.2d at 1057 ("[D]isbarment is presumed to be the appropriate sanction for any intentional dishonest misconduct, including the intentional misappropriation of funds."); *Att'y Griev. Comm'n v. Santos,* 370 Md. 77, 87, 803 A.2d 505, 511 (2002) (noting that disbarment is the preferred sanction in cases involving misappropriation but imposing an indefinite suspension because the hearing judge had concluded that the attorney's misappropriation was not "dishonest or fraudulent or done with intent to defraud"). In the present case, the D.C. Court of Appeals concluded that Tun's misappropriation

was due to his "abysmal record-keeping," rather than intentional misconduct.

In *Attorney Grievance Commission v. Calhoun*, we suspended indefinitely an attorney who violated MLRPC 1.1, 1.3, 1.4, 1.5, 1.15, 8.4(a), 8.4(c), and 8.4(d) during her representation of a client involving a civil damages claim for sexual discrimination against the client's former employer. 391 Md. 532, 543, 894 A.2d 518, 525 (2006). We concluded that Calhoun violated MLRPC 1.5 "by attempting to charge interest and penalty fees to Mr. Schell which were not in his representation agreement as well as building up excessive fees through her delaying of the litigation." *Calhoun*, 391 Md. at 569–70, 894 A.2d at 540. Quoting from *Attorney Grievance Commission v. Culver*, 371 Md. 265, 280, 808 A.2d 1251, 1260 (2002), we noted that " '[i]t is not the finding of effective dishonesty, fraud or misappropriation, however, that is essential to our determination whether disbarment is the appropriate sanction, but rather the attorney's intent.' " *Calhoun*, 391 Md. at 572, 894 A.2d at 542. In a case of misappropriated client funds, " 'where there is no finding of intentional misappropriation . . . and where the misconduct did not result in financial loss to any of the respondent's clients, an indefinite suspension ordinarily is the appropriate sanction.' "[13] *Calhoun*, 391 Md. at 572, 894 A.2d at 542 (internal citations omitted) (quoting *Att'y Griev. Comm'n v. Zuckerman*, 386 Md. 341, 376, 872 A.2d 693, 714 (2005)). Because the hearing judge concluded that Calhoun's actions were not fraudulent intentionally and that she may have believed the fees were owed to her as part of the representation, this Court imposed an indefinite suspension, rather than disbarment. *Calhoun*, 391 Md. at 574, 894 A.2d at 543.

An indefinite suspension for unintentional misappropriation of client funds was the proper sanction for a number of other attorney misconduct cases. *See Att'y Griev. Comm'n v. Sperling*, 380 Md. 180, 844 A.2d 397 (2004) (imposing an indefinite

---

13. Tun repaid to the Superior Court the double-billed portion of the fees he received.

suspension with the right to reapply after 90 days for violations of MLRPC 1.15 and 8.4(a)); *Culver*, 371 Md. at 284, 808 A.2d at 1262 (imposing an indefinite suspension with a right to reapply after 30 days for violations of 1.5(c), 1.15(c), and Maryland Rule 16–607(b)(2)); *Att'y Griev. Comm'n v. DiCicco*, 369 Md. 662, 802 A.2d 1014 (2002) (imposing an indefinite suspension with the right to reapply after 90 days for violations of 1.15(a) and (c), 8.4(a), Maryland Rules 16–607(a) and 16–609).

We are persuaded that an indefinite suspension, with the right to apply for readmission in Maryland after Tun is readmitted *unconditionally* in the District of Columbia, is the appropriate sanction here because it is consistent with other sanctions in Maryland attorney misconduct cases where the attorney's financial misappropriation actions (whether impacting a client or third party) were negligent, rather than intentional. Despite the fact that Tun's D.C. sanction is less severe than our reciprocal discipline, "[i]t would be a grave injustice in allowing a member of this Bar to ... be given a lesser sanction because another jurisdiction did so, while other members of the Maryland Bar would be sanctioned more severely." *Weiss*, 389 Md. at 555, 886 A.2d at 620.

**IT IS SO ORDERED. RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION OF MARYLAND AGAINST HARRY TUN.**