76 A.3d 1096

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Julia COLTON–BELL.

Misc. Docket AG No. 33, Sept. Term, 2009.

Court of Appeals of Maryland.

Sept. 26, 2013.

554

Fletcher P. Thompson, Assistant Bar Counsel (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission of Maryland), for Petitioner.

No argument on behalf of Respondent.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY *, ADKINS and BELL **, JJ.

BELL, C.J. (Retired).

The petitioner, the Attorney Grievance Commission of Maryland ("AGC"), filed, pursuant to Maryland Rule 16–751, a

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

** Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court, but did not participate in the decision or adoption of this opinion.

Petition for Disciplinary or Remedial Action against Julia Colton–Bell, the respondent. Therein, the petitioner alleged that the respondent violated Rules 1.1,[1] 1.3,[2] 1.4,[3] 1.5,[4] 1.15,[5]

---

1. MLRPC 1.1 provides:
   "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

2. MLRPC 1.3 provides:
   "A lawyer shall act with reasonable diligence and promptness in representing a client."

3. MLRPC 1.4 provides:
   "(a) A lawyer shall:
   "(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;
   "(2) keep the client reasonably informed about the status of the matter;
   "(3) promptly comply with reasonable requests for information; and
   "(4) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.
   "(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

4. MLRPC 1.5 provides:
   "(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
   "(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
   "(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
   "(3) the fee customarily charged in the locality for similar legal services;
   "(4) the amount involved and the results obtained;
   "(5) the time limitations imposed by the client or by the circumstances;
   "(6) the nature and length of the professional relationship with the client;
   "(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) whether the fee is fixed or contingent.

"(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

"(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be responsible whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of its determination.

"(d) A lawyer shall not enter into an arrangement for, charge, or collect:

"(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or custody of a child or upon the amount of alimony or support or property settlement, or upon the amount of an award pursuant to Md. Code, Family Law Article, §§ 8–201 through 213; or

"(2) a contingent fee for representing a defendant in a criminal case.

"(e) A division of a fee between lawyers who are not in the same firm may be made only if:

"(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;

"(2) the client agrees to the joint representation and the agreement is confirmed in writing; and

"(3) the total fee is reasonable."

5. MLRPC 1.15 provides:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules, and records shall be created and maintained in accordance with the Rules in that Chapter. Other property shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. Complete records of the account funds and of other property

1.16,[6] 5.5,[7] 8.1,[8] and 8.4 [9] of the Maryland Lawyers' Rules of

---

shall be kept by the lawyer and shall be preserved for a period of at least five years after the date the record was created.

"(b) A lawyer may deposit the lawyer's own funds in a client trust account only as permitted by Rule 16–607 b.

"(c) Unless the client gives informed consent, confirmed in writing, to a different arrangement, a lawyer shall deposit legal fees and expenses that have been paid in advance into a client trust account and may withdraw those funds for the lawyer's own benefit only as fees are earned or expenses incurred.

"(d) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render promptly a full accounting regarding such property.

"(e) When a lawyer in the course of representing a client is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved. The lawyer shall distribute promptly all portions of the property as to which the interests are not in dispute."

6. MLRPC 1.16 provides:

"(a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

"(1) the representation will result in violation of the Maryland Lawyers' Rules of Professional Conduct or other law;

"(2) the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client; or

"(3) the lawyer is discharged.

"(b) Except as stated in paragraph (c), a lawyer may withdraw from representing a client if:

"(1) withdrawal can be accomplished without material adverse effect on the interests of the client;

"(2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

"(3) the client has used the lawyer's services to perpetrate a crime or fraud;

"(4) the client insists upon action or inaction that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement;

"(5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;

"(6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or

"(7) other good cause for withdrawal exists."

"(c) A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating representation. When ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.

"(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."

7. MLRPC 5.5 provides:

"(a) A lawyer shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

"(b) A lawyer who is not admitted to practice in this jurisdiction shall not:

"(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

"(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

"(c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:

"(1) are undertaken in association with a lawyer who is admitted to practice in this jurisdiction and who actively participates in the matter;

"(2) are in or reasonably related to a pending or potential proceeding before a tribunal in this or another jurisdiction, if the lawyer, or a person the lawyer is assisting, is authorized by law or order to appear in such proceeding or reasonably expects to be so authorized;

"(3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires *pro hac vice* admission; or

"(4) are not within paragraphs (c)(2) or (c)(3) and arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.

"(d) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services in this jurisdiction that:

Professional Conduct ("MLRPC") as adopted by Maryland Rule 16–812; Maryland Rules 16–604 [10] and 16–606; [11] and

"(1) are provided to the lawyer's employer or its organizational affiliates and are not services for which the forum requires *pro hac vice* admission; or

"(2) are services that the lawyer is authorized to provide by federal law or other law of this jurisdiction."

8. MLRPC 8.1 provides:
"An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

"(a) knowingly make a false statement of material fact; or

"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

9. MLRPC 8.4 provides:
"It is professional misconduct for a lawyer to:

"(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another

"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

"(d) engage in conduct that is prejudicial to the administration of justice;

"(e) knowingly manifest by words or conduct when acting in a professional capacity bias or prejudice based upon race, sex, religion, national origin, disability, age, sexual orientation or socioeconomic status when such action is prejudicial to the administration of justice, provided, however, that legitimate advocacy is not a violation of this paragraph;

"(f) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Maryland Lawyers' Rules of Professional Conduct or other law; or

"(g) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law."

10. Md. Rule 16–604 provides:
"Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule

Maryland Code §§ 10–304[12] and 10–306[13] of the Business Occupations and Professions Article ("BP"). We ordered, pursuant to Maryland Rule 16–752(a), that the matter be transmitted "to the Circuit Court for Montgomery County to be heard and determined by Judge Robert A. Greenberg, of the Sixth Judicial Circuit, in accordance with Maryland Rule 16–757."

The petitioner was unable to serve the respondent with the Petition for Disciplinary Action at any of her listed mailing addresses and, therefore, pursuant to Maryland Rule 16–753, served the Administrator of the Client Protection Fund. The respondent neither filed an answer to the Petition, nor a motion to vacate the consequent Order of Default issued by the Circuit Court pursuant to Maryland Rules 2–613(b) and 16–754(c). Following a hearing, at which the respondent failed to appear, the Circuit Court made the following findings of fact:

---

does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person."

**11.** Md. Rule 16–606 provides:
"An attorney or law firm shall maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as 'Attorney Trust Account', 'Attorney Escrow Account', or 'Clients' Funds Account' on all checks and deposit slips. The title shall distinguish the account from any other fiduciary account that the attorney or law firm may maintain and from any personal or business account of the attorney or law firm."

**12.** Md. Code (1989, 2010 Repl. Vol.) § 10–304 of the Bus. Occ. & Prof. Article provides:
"(a) Except as provided in subsection (b) of this section, a lawyer expeditiously shall deposit trust money into an attorney trust account.
"(b) Subsection (a) of this section does not apply if there is a court order to the contrary.
"(c) Notwithstanding subsection (a) of this section or any other law, a lawyer may disburse, at settlement in a real estate transaction, trust money that the lawyer receives in the transaction."

**13.** Md. Code (1989, 2010 Repl. Vol.) § 10–306 of the Bus. Occ. & Prof. Article provides:
"A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

"Respondent was admitted to the bar of Maryland on June 5, 1996. On or about December 4, 2005, Complainant, who is presently serving a life sentence at the federal penitentiary in Lewisburg, Pennsylvania, retained Respondent for representation in a *habeas corpus* proceeding. On that date, Complainant signed a retainer agreement that obligated him to pay Respondent a flat fee of $20,000.00, which would be placed in her operating account and considered earned upon undertaking the representation. Complainant, however, did not give informed consent, confirmed in writing, for Respondent to immediately place the fee in her operating account. The retainer agreement also provided that the Complainant would make an advance payment of $10,000.00, which would be non-refundable once earned, regardless of the case's outcome. In exchange, Respondent agreed to file a successive *habeas corpus* petition.

"Pursuant to the parties' fee agreement, the following payments were made: $8,225.00 on August 15, 2005; $1,550.00 on May 23, 2006; $500.00 on August 7, 2006; and $10,000.00 on September 21, 2006, for a total of $20,275.00. All of the payments, except for the $500.00 installment, were deposited in Respondent's operating account, which was titled 'IOLTA.' [14]

"Respondent never filed a *habeas corpus* petition on Complainant's behalf. On March 18, 2008, Respondent sent Complainant a letter stating that, because of health issues, she could no longer represent him, but could solicit the assistance of another attorney on his behalf. She also stated that Complainant could terminate her as his counsel, at which time they would 'discuss the terms of refunding his fee.' Complainant did not respond to this letter. Respondent wrote him again on May 5, 2008, inquiring how he wished to proceed. This was her last correspondence to Complainant.

"On April 8, 2008, the Court of Appeals decertified Respondent for failure to pay the Client Protection Fund assess-

---

14. "IOLTA" is an acronym for "Interest on Lawyers Trust Account."

ment. Despite being stripped of her ability to legally practice law in Maryland, Respondent subsequently entered her appearance in three cases: *Waterton v. Waterton,* 0602SP029202008, in the Circuit Court for Montgomery County; *Rose v. Daneri,* 713338–FL, in the Circuit Court for Montgomery County; and *Shumate v. Duren,* CAL 0814488, in the Circuit Court for Prince George's County. "Complainant sent a letter to Bar Counsel on May 11, 2008, lodging a complaint against Respondent. He stated that he had retained Respondent as counsel for his *habeas corpus* proceeding, and paid her flat fee for her services, but she had not performed the agreed-upon work. Further, he alleged that, despite numerous attempts, he had not been able to get in contact with her and speak about the status of the case. On May 28, 2008, Assistant Bar Counsel Kathleen McLaughlin forwarded to Respondent a copy of the complaint, requesting a response to the allegations within 15 days. Respondent did not answer this letter. On June 24, 2008, Ms. McLaughlin sent her another request for a response.

"On June 26, 2008, Respondent answered Ms. McLaughlin's correspondence, and enclosed copies of her letters to Complainant to demonstrate her attempts at communication. Ms. McLaughlin, in turn, wrote to Respondent on July 8, 2008, stating that Complainant no longer required her services, but emphasized that he wanted his fee returned. This letter was unanswered, so on July 21, 2008, Ms. McLaughlin again wrote to Respondent, requesting copies of her billing statements, evidence that the retainer payment was placed in her escrow account, and documentation concerning disbursement of Complainant's funds, within 10 days.

"On July 17, 2008, Complainant wrote to Ms. McLaughlin, and enclosed a letter from Gary Roehm, Esq., dated July 14, 2008, indicating that he had been hired by Respondent to work on Complainant's *habeas corpus* proceeding. However, in his correspondence to Ms. McLaughlin, Complainant stressed that he did not want, nor did he agree to, Respon-

dent hiring substitute counsel and still desired the refunding of his fee. This letter was forwarded to Respondent on July 31, 2008, and on August 18, 2008, Gary Huggins, Esq., sent Bar Counsel a response on her behalf. Mr. Huggins stated that Respondent had already paid $3,750.00 to another attorney and a private investigator for Complainant's case. Mr. Huggins, however, failed to provide the documents previously requested by Mr. McLaughlin. Therefore, on August 28, 2008, Ms. McLaughlin wrote to Mr. Huggins, requesting evidence of Complainant's consent to Respondent depositing the $20,000.00 fee immediately into her operating account. In a letter, dated September 10, 2008, Respondent stated that the retainer agreement itself authorized placement of the advance fee payment in her operating account. Respondent never returned any portion of Complainant's fee.

"In light of the Complaint and Respondent's failure to comply with Petitioner's requests, Bar Counsel assigned Dennis Biennas, its investigator, to look into the matter. As part of his investigation, Mr. Biennas arranged to interview Respondent on November 20, 2008. Respondent, however, canceled the appointment on the morning of the interview, and rescheduled for December 3, 2008. On December 3, Respondent again canceled the appointment, after Wendy Hartman, a Virginia-barred attorney, advised her to seek counsel and arrange for a new interview date. Mr. Biennas did not hear from Respondent after December 3, so on December 16 he wrote her a letter, seeking a new appointment date and reciting his previous efforts to set up a meeting. Because Respondent failed to answer this letter, Mr. Biennas ceased the investigation on January 9, 2009.

"On February 9, 2009, Albert Wilson, Jr., Esq., wrote to Ms. McLaughlin and Glenn Grossman, Deputy Bar Counsel, regarding Respondent's disciplinary investigation, stating that she had performed substantial work on Complainant's case (138.5 hours), and in support of this contention, en-

closed a record log of the time spent on the case, for which she billed at an hourly rate of $225.00."

(Internal citations and footnotes omitted).

From these facts, the hearing judge drew conclusions of law, as follows:

"**1. M[L]RPC 1.1—Competence, M[L]RPC 1.2(a)[** [15] **]— Duty to Consult with Client and M[L]RPC 1.3—Diligence**

"Although Respondent may have been competent to represent Complainant in his *habeas corpus* proceeding, the facts demonstrate a complete failure to file a *habeas corpus* petition, the purpose of Respondent's representation. The Court of Appeals has held that an attorney's complete failure to file a petition on behalf of his/her client, such as an emergency or adoption petition, constitutes a violation of the Maryland Rules of Professional Conduct ("M[L]RPC") 1.1 (See *Attorney Grievance Comm'n v. McCulloch,* 404 Md. 388 [946 A.2d 1009] (2008); *Attorney Grievance Comm'n v. Guida,* 391 Md. 33 [891 A.2d 1085] (2006)). This court

---

**15.** MLRPC 1.2 provides:

"(a) Subject to paragraphs (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

"(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social or moral views or activities.

"(c) A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent.

"(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law."

similarly finds, by clear and convincing evidence, that Respondent's complete disregard for Complainant's case and the *habeas corpus* petition violated M[L]RPC 1.1.

"Additionally, in violation of M[L]RPC 1.2(a) and 1.3, Respondent failed to exercise reasonable diligence on Complainant's behalf and consult with him about the case. After May, 2008, Respondent simply walked away from the matter, and, although she initially stated that Complainant might be entitled to a refund of his fee, she subsequently ended all communication. Then, from November, 2008, until January, 2009, Respondent canceled several appointments and failed to meet with Mr. Biennas, thus ignoring her duty to cooperate with the disciplinary investigation.

"This court finds, by clear and convincing evidence, that Respondent's complete abandonment of her duties and responsibilities to Complainant constituted a violation of M[L]RPC 1.1, 1.2(a) and 1.3.

"**2. M[L]RPC 1.4(a)(3)—Communication**

"In July, 2008, Bar Counsel forwarded Complainant's letters to Respondent, indicating that he no longer wished to retain her as counsel, but wanted his fee returned, pursuant to her March, 2008, offer. Respondent never answered this correspondence, nor did she refund any portion of the money.

"M[L]RPC 1.4(a)(3) requires an attorney to promptly comply with a client's reasonable request for information. Complainant was entitled to be apprised of Respondent's position on the refund and, at the very least, a general response to his correspondence. This court finds clear and convincing evidence that Respondent's absolute lack of attention to Complainant's inquiries and communications constituted a violation of M[L]RPC 1.4(a)(3).

"**3. M[L]RPC 1.5(a)—Unreasonable Fee**

"The court in *Attorney Grievance Comm'n v. Briscoe*, 357 Md. 554 [745 A.2d 1037] (2000), held that a non-refundable fee, obtained for unperformed work, would most likely violate M[L]RPC 1.5, which prohibits an attorney from

making an agreement for, charging, or collecting an unreasonable fee.

"Contrary to the Rules, Respondent entered into a fee agreement with Complainant that entitled her to $20,000.00, simply by signing the agreement, and without performing the agreed-upon work. This court finds clear and convincing evidence that Respondent's actions, in connection with the fee agreement, violate M[L]RPC 1.5(a).

"4. **M[L]RPC 1.15 [ (c) ], Md. Rule 16–604 and Md.Code Ann., Bus. Occ. & Prof. § 10–304—Placing Client's Payments Immediately Into Operating Account**

"In Respondent's September, 2008, letter to Assistant Bar Counsel, she contends that the fee agreement itself authorized her to immediately deposit the money into her operating account. Additionally, Mr. Wilson forwarded to bar Counsel Respondent's record of the time she spent on the case, reflecting an hourly charge of $225.00. This log, however, did not indicate that Respondent even drafted, much less filed, Complainant's *habeas corpus* petition. A substantial portion of the work allegedly performed on Complainant's behalf occurred before the retainer agreement was signed. Further, pursuant to the parties' agreement, Complainant was to pay a flat fee of $20,000.00 for the entire representation, and was not to be billed at an hourly rate.

"This court finds that although Complainant agreed to the fee arrangement, he did not give the requisite informed, written consent, pursuant to M[L]RPC 1.15(c). Complainant should have been advised of his right to insist upon placement of the money in trust, the risks associated with direct deposit into an operating account, and then confirmed his consent in writing. Additionally, Md. Rule 16–604 and Md.Code Ann., Bus. Occ. & Prof. § 10–304 require an attorney to deposit a client's fee immediately into an attorney trust account, in an approved financial institution.

"By failing to obtain the requisite consent when entering into the subject agreement, and later failing to preserve these monies in trust, this court finds, by clear and convinc-

ing evidence, that Respondent violated M[L]RPC 1.15(c), Md. Rule 16–604 and Md.Code Ann., Bus. Occ. & Prof. § 10–304.

**"5. M[L]RPC 1.16(d)—Failure to Return an Unearned Fee**

"M[L]RPC 1.16(d) provides that, upon termination of representation, a lawyer shall take steps, to the extent reasonably practicable, to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. This court in *Attorney Grievance Comm'n v. Tinsky,* 777 [377] Md. 646 [835 A.2d 542] (2003), held that an attorney violates M[L]RPC 1.16(d) when he or she abandons his or her practice and fails to return fees to a client for an uncompleted case.

"In the instant case, Respondent abandoned the case and failed to refund any portion of Complainant's $20,000.00 fee, despite alluding to this possibility in March 2008. Because Respondent's performance did not entitle [ ] her to the fee deposited into her account, this court finds clear and convincing evidence that her failure to return the money constitutes a violation of M[L]RPC 1.16(d).

**"6. M[L]RPC 5.5(a)—Unauthorized Practice of Law**

"M[L]RPC 5.5(a) prohibits an attorney from engaging in the unauthorized practice of law or assisting in such activity. Although, she was no longer authorized to practice law in Maryland, Respondent continued to enter her appearance in three Maryland cases after her April, 2008 decertification. This court finds clear and convincing evidence that Respondent's continued practice of law, subsequent to her decertification, constitutes a violation of M[L]RPC 5.5(a).

**"7. M[L]RPC 8.1(b)—Failure to Cooperate With Disciplinary Matters**

"After scheduling an appointment to meet with Bar Counsel's investigator, Mr. Biennas, Respondent canceled the

November 20th meeting and failed to make herself available for future dates. Her refusal to cooperate with the disciplinary authority caused Mr. Biennas to cease the investigation. However pursuant to M[L]RPC 8.1(b), Respondent was required to respond to a lawful demand for information from the disciplinary authority, in connection with an investigation. This court finds clear and convincing evidence that this obstruction of the disciplinary investigation violates M[L]RPC 8.1(b).

"8. M[L]RPC 8.4(c)—Attorney Misconduct

"Pursuant to M[L]RPC 8.4(c), it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation. This court finds, by clear and convincing evidence, that by expending Complainant's entire fee, without preserving funds in trust, or performing the agree[d-]upon work, Respondent violated M[L]RPC 8.4(c).

"9. Md. Rule 16–606—Name and Designation of Account

"Pursuant to Md. Rule 16–606, an attorney shall maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as 'Attorney Trust Account,' 'Attorney Escrow Account,' or 'Client's Funds Account,' on all checks and deposit slips. The title shall distinguish the account from any other fiduciary account that the attorney or law firm may maintain and from any personal or business account for the attorney or law firm.

"In the instant case, the court finds clear and convincing evidence that Respondent violated Md. Rule 16–606, by titling the subject account 'IOLTA,' rather than 'Attorney Trust Account,' 'Attorney Escrow Account,' or 'Client's Funds Account,' as permitted by the Rules."

(Footnotes omitted).

As indicated, the respondent did not appear or participate in these proceedings. Therefore, she has not filed any exceptions to the hearing judge's Findings of Fact and Conclusions

of Law. Neither has the petitioner. On the other hand, the petitioner has filed a recommendation as to sanction. It is that the respondent be disbarred.

■■■■ This Court exercises original and complete jurisdiction over attorney disciplinary proceedings. *Attorney Grievance Comm'n v. Maignan,* 390 Md. 287, 292, 888 A.2d 344, 347 (2005); *Attorney Grievance Comm'n v. James,* 385 Md. 637, 654, 870 A.2d 229, 239 (2005); *Attorney Grievance Comm'n v. O'Toole,* 379 Md. 595, 604, 843 A.2d 50, 55 (2004); *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 470, 671 A.2d 463, 473 (1996); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 371, 653 A.2d 909, 914 (1995); *Attorney Grievance Comm'n v. Joehl,* 335 Md. 83, 88, 642 A.2d 194, 196 (1994). The responsibility of conducting disciplinary proceedings is delegated to circuit court judges, but this Court reviews the resulting findings of fact and conclusions of law to ensure they are supported by clear and convincing evidence. Maryland Rule 16–759 provides guidance for such review.

■■■■ Maryland Rule 16–759(b) provides:

"(1) Conclusions of Law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

"(2) Findings of Fact.

"(A) If no Exceptions Are Filed. If no exceptions are filed, the Court may treat the findings of fact as established for the purpose of determining appropriate sanctions, if any.

"(B) If Exceptions are filed. If exceptions are filed, the Court of Appeals shall determine whether the findings of fact have been proven by the requisite standard of proof set out in Rule 16–757(b). The Court may confine its review to the findings of fact challenged by the exceptions. The Court shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."

Explicating this Rule, we said in *Attorney Grievance Comm'n v. Goff,* 399 Md. 1, 27–28, 922 A.2d 554, 569–70, *reinstatement granted,* 400 Md. 97, 928 A.2d 795 (2007):

> "Thus, we review de novo the hearing court's conclusions of law. Rule 16–759(b)(1); *Attorney Grievance Comm'n v. Mahone,* 398 Md. 257, 265–66, 920 A.2d 458, 463, 2007 WL 1051696, (2007); *Attorney Grievance Comm'n v. Mba–Jonas,* 397 Md. 690, 700, 919 A.2d 669, 675 (2007); *Attorney Grievance Comm'n v. Hodgson,* 396 Md. 1, 6–7, 912 A.2d 640, 644 (2006); *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002); *Attorney Grievance Comm'n v. Joehl,* 335 Md. 83, 88, 642 A.2d 194, 196 (1994) (noting that the ultimate decision as to whether an attorney has engaged in professional misconduct rests with this Court). When the factual findings are not clearly erroneous and the conclusions drawn from them are supported by the facts found, exceptions to conclusions of law will be overruled. *Mba–Jonas,* 397 Md. at 700, 919 A.2d at 675; *Attorney Grievance Comm'n v. Manger,* 396 Md. 134, 146–147, 913 A.2d 1, 8 (2006). Moreover, a hearing court's findings of fact will not be overruled unless we determine that they are clearly erroneous. *Mahone,* 398 Md. at 265, 920 A.2d at 463; *Guida,* 391 Md. at 50, 891 A.2d at 1095. 'Weighing the credibility of witnesses and resolving any conflict in the evidence are tasks proper for the fact finder.' *State v. Stanley,* 351 Md. 733, 750, 720 A.2d 323, 331 (1998)."

*See also Attorney Grievance Comm'n v. Tanko,* 408 Md. 404, 418–19, 969 A.2d 1010, 1019 (2009); *Attorney Grievance Comm'n v. Harris,* 403 Md. 142, 155–56, 939 A.2d 732, 740 (2008) (noting that, "[a]s to the hearing judge's conclusions of law, such as whether the provisions of the MLRPC were violated, our consideration is essentially de novo."); *Attorney Grievance Comm'n v. Zuckerman,* 386 Md. 341, 363, 872 A.2d 693, 706 (2005) *reinstatement granted sub nom. Attorney Grievance Comm'n v. Zuckerman,* 387 Md. 326, 875 A.2d 132 (2005). Indeed, in such proceedings, we deem the factual findings of the hearing judge to be *prima facie* correct, which is why we will not disturb them on review unless they are

proven to be clearly erroneous. *Attorney Grievance Comm'n v. Ward,* 394 Md. 1, 15, 904 A.2d 477, 486 (2006); *Attorney Grievance Comm'n v. Kahn,* 290 Md. 654, 678, 431 A.2d 1336, 1349 (1981). As to the legal conclusions, "[a]ny conclusions of law made by the hearing judge, such as whether provisions of the MLRPC were violated, are subject to our *de novo* review." *O'Toole,* 379 Md. at 604, 843 A.2d at 55 (citing *Attorney Grievance Comm'n v. McLaughlin,* 372 Md. 467, 493, 813 A.2d 1145, 1160 (2002)).

We shall exercise our discretion under Maryland Rule 16–759(b)(2)(A) and treat the findings of fact as established. Upon a *de novo* review of each of the hearing judge's conclusions of law, as required by Maryland Rule 16–759(b)(1), we conclude that each conclusion is supported by the facts found. Accordingly, we adopt the hearing judge's conclusions.

Lastly, we must determine the appropriate sanction for the established violations. MLRPC 8.5(a) [16] authorizes this Court to impose sanctions for attorney misconduct. We do so, however, aware that the purpose of attorney discipline is the protection of the public, not the punishment of the erring attorney. *E.g., Attorney Grievance Comm'n v. Robertson,* 400 Md. 618, 642, 929 A.2d 576, 590; *Attorney Grievance Comm'n v. Hill,* 398 Md. 95, 103, 919 A.2d 1194, 1198 (2007); *Attorney Grievance Comm'n v. Holt,* 391 Md. 673, 682, 894 A.2d 602, 607 (2006). "Because an attorney's character must remain beyond reproach, this Court has the duty, since attorneys are its officers, to insist upon the maintenance of the integrity of

---

16. MLRPC 8.5(a) provides, in relevant part:

"(a) Disciplinary Authority.

"(1) A lawyer admitted by the Court of Appeals to practice in this State is subject to the disciplinary authority of this State, regardless of where the lawyer's conduct occurs.

"(2) A lawyer not admitted to practice in this State is also subject to the disciplinary authority of this State if the lawyer

"(i) provides or offers to provide any legal services in this State,

"(ii) holds himself or herself out as practicing law in this State, or

"(iii) has an obligation to supervise or control another lawyer practicing law in this State whose conduct constitutes a violation of these Rules."

the bar and to prevent the transgressions of an individual lawyer from bringing its image into disrepute." *Attorney Grievance Comm'n v. Sheridan*, 357 Md. 1, 27, 741 A.2d 1143, 1157 (1999) (quoting *Attorney Grievance Comm'n v. Deutsch*, 294 Md. 353, 368–69, 450 A.2d 1265, 1273 (1982)). Therefore, this Court must exercise its disciplinary authority "to protect the public and its confidence in the legal profession." *Attorney Grievance Comm'n v. Goodman*, 426 Md. 115, 131, 43 A.3d 988, 997 (2012).

■ When imposing sanctions that will best serve this purpose, we must look to the facts and circumstances underlying the misconduct. *E.g., Attorney Grievance Comm'n v. Siskind*, 401 Md. 41, 74, 930 A.2d 328, 347 (2007); *Attorney Grievance Comm'n v. Mahone*, 398 Md. 257, 269, 920 A.2d 458, 465 (2007). This is because "[t]he severity of the sanction to be applied is measured by the egregiousness of the misconduct under the particular facts and circumstances of the case." *Attorney Grievance Comm'n v. Gisriel*, 409 Md. 331, 386, 974 A.2d 331, 363 (2009) (citing *Attorney Grievance Comm'n v. Montgomery*, 318 Md. 154, 165, 567 A.2d 112, 117 (1989)). Next, "we consider the nature of the ethical duty violated in light of any aggravating or mitigating circumstances." *Attorney Grievance Comm'n v. Nussbaum*, 401 Md. 612, 643, 934 A.2d 1, 19 (2007) (citing *Attorney Grievance Comm'n v. Sweitzer*, 395 Md. 586, 598–99, 911 A.2d 440, 447–48 (2006)). Again, this is because it is only by imposing sanctions "that are commensurate with the nature and gravity of the violations and the intent with which they were committed," *Attorney Grievance Comm'n v. Gore*, 380 Md. 455, 472, 845 A.2d 1204, 1213 (2004), that this Court may best protect the public, which is, as we have seen, the purpose of attorney sanctions authorized under MLRPC 8.5(a).

The petitioner recommends that the respondent be disbarred.[17] In support of this recommendation, the petitioner

---

17. The petitioner likens the respondent's conduct to the conduct sanctioned by disbarment in three prior attorney misconduct cases. *See*

emphasizes the hearing judge's finding that the respondent abandoned representation of the complainant without providing the agreed-upon representation and without returning any portion of the agreed-upon fee. Furthermore, it is troubled by the fact that the respondent deposited the complainant's fee directly into her operating account. The petitioner likens the respondent's conduct to the conduct for which the attorneys in *Attorney Grievance Comm'n v. McCulloch*, 404 Md. 388, 402–03, 946 A.2d 1009, 1018 (2008); *Attorney Grievance Comm'n of Maryland v. Duvall*, 384 Md. 234, 241, 863 A.2d 291, 295 (2004); and *Attorney Grievance Comm'n v. Tinksy*, 377 Md. 646, 655, 835 A.2d 542, 547 (2003) were disbarred. It points out that, in each of the cases, the attorney "expended advance fee payments before completing the work for which [he or she was] paid and made no refunds to [his or her] client[ ]." In *McCulloch*, the misconduct consisted of placing an unearned fee in her operating account, spending the unearned fee for personal purposes, failing to return any portion of the unearned fee, and failing to respond to Bar Counsel's inquiries concerning her client's complaint. The misconduct in *Duvall* included failure to account for the unearned portion of

Attorney Grievance Comm'n v. McCulloch, 404 Md. 388, 402–03, 946 A.2d 1009, 1018 (2008) (finding that disbarment is the appropriate sanction in light of the respondent's recent disciplinary history indicating similar misconduct involving placing an unearned fee in her operating account, spending the unearned fee for personal purposes, failing to return any portion of the unearned fee, and failing to respond to Bar Counsel's inquiries concerning her client's complaint); Attorney Grievance Comm'n v. Duvall, 384 Md. 234, 241, 863 A.2d 291, 295 (2004) (adopting the petitioner's recommendation for disbarment upon considering both the respondent's misconduct, which included failure to account for the unearned portion of a retainer, failing to refund the unearned portion to the client, and using those funds for a purpose other than that for which they were entrusted to the respondent, as well as the respondent's prior discipline for similar and more serious violations); and Attorney Grievance Comm'n v. Tinksy, 377 Md. 646, 655, 835 A.2d 542, 547 (2003) (concluding that disbarment is appropriate, despite the respondent's lack of previous sanctions, for misconduct involving lack of diligence, lack of preparation, failure to communicate with clients, charging unreasonable fees, failure to account for or return unearned fees, misrepresentations, and failure to comply with Bar Counsel's requests).

a retainer, failing to refund the unearned portion to the client, and using those funds for a purpose other than that for which it was entrusted to the respondent. In *Tinsky*, the misconduct involved, in addition to a lack of diligence and preparation and failing to communicate with clients, charging unreasonable fees, failing to account for, or return, unearned fees, misrepresentations, and failure to comply with Bar Counsel's requests for information.

We agree with, and will adopt, the petitioner's recommendation.

In *Attorney Grievance Comm'n v. Tun*, we explained our approach to determining whether, in a given case, disbarment is an appropriate sanction:

"This Court strives to impose internally consistent sanctions for similar attorney misconduct. Thus, we evaluate our precedents to determine the appropriate sanction for [the respondent's] admitted misconduct. Under Maryland's two-tiered system, intentional misappropriation warrants disbarment ordinarily, but where the conduct was unintentional or due to negligence, indefinite suspension is the appropriate sanction usually." *See, e.g., [Attorney Grievance Comm'n v.] Cafferty,* 376 Md. [700,] 724, 831 A.2d 1042,] 1057 [ (2003) ] ("[D]isbarment is presumed to be the appropriate sanction for any intentional dishonest misconduct, including the intentional misappropriation of funds."); *Att[orney ] Griev[ance ] Comm'n v. Santos,* 370 Md. 77, 87, 803 A.2d 505, 511 (2002) (noting that disbarment is the preferred sanction in cases involving misappropriation but imposing an indefinite suspension because the hearing judge had concluded that the attorney's misappropriation was not "dishonest or fraudulent or done with intent to defraud")."

428 Md. 235, 246, 51 A.3d 565, 572 (2012), *reconsideration denied* (Dec. 11, 2012).

Consistently, in a recent case, involving similar misconduct, we disbarred the respondent, explaining:

"In the absence of mitigation ... disbarment is the appropriate sanction when an attorney abandons a client by

failing to pursue the client's interests, failing to communicate with the client, ignoring a client's repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, ... failing to return unearned fees, [and] fail[ing] to cooperate with Bar Counsel's lawful demands for information[.]"

*Attorney Grievance Comm'n v. Costanzo*, 432 Md. 233, 257, 68 A.3d 808, 822 (2013) (quoting *Attorney Grievance Comm'n v. Heung Sik Park*, 427 Md. 180, 196, 46 A.3d 1153, 1162 (2012)). Costanzo was found to have violated MLRPC 1.1, 1.2, 1.3, 1.4(a)(2), 1.15(a), 1.16(d), 8.4(c), BP § 10–306, and Maryland Rule 16–609. *Costanzo*, 432 Md. at 257, 68 A.3d at 822. We concluded that Costanzo's misconduct was a pattern, which we characterized as egregious and deserving of disbarment in the absence of any mitigation. *Id.* at 257, 68 A.3d at 822. *See Heung Sik Park*, 427 Md. at 196, 46 A.3d at 1162 ("In the absence of mitigation (as here), disbarment is the appropriate sanction when an attorney abandons a client by failing to pursue the client's interests, failing to communicate with the client, ignoring a client's repeated requests for status updates, terminating the representation without notice by failing wholly to provide effective services, and failing to return unearned fees.").

In the present case, the respondent's misconduct also is egregious and deserving of disbarment. In addition to the grounds reflected and enumerated in *Costanzo, McCulloch, Duvall,* and *Tinksy,* the respondent's misconduct includes charging an unreasonable fee, continuing to practice law after decertification, and obstructing Bar Counsel's disciplinary investigation. Moreover, the respondent has offered no mitigating factors in response to the Bar Counsel's charges or the hearing judge's Findings of Fact and Conclusions of Law. Disbarment is the appropriate sanction.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTOR-

NEY GRIEVANCE COMMISSION AGAINST JULIA COL-TON–BELL.